*The Trustees of the* METHODIST EPISCOPAL CHURCH, *in*    *June* 25th.
*New-York, and the Children of* T. BROWN, *against*
JOHN D. JAQUES AND ӨTHEᚱS.

If a defendant submits to answer a bill of discovery, &c. he must answer fully,
except in certain cases, as where the discovery may tend to criminate him,
or where he is a purchaser for a valuable consideration.

If the defendant rests himself on a fact, as an objection to a further discovery,
it ought to be such a fact as, if true, would, at once, be a clear, decided, and
inevitable bar to the plaintiff's demand.

A defendant is bound, in his answer, to admit, or deny, all the facts stated in
the bill, with all their material circumstances, without any special inter-
rogatories in the bill for that purpose.

The general interrogatory, or requisition, in the bill : " that the defendant
may full answer make, to all and singular the premises, fully and particu-
larly, as though the same were repeated, and he specially interrogated,
paragraph by paragraph, with sums, dates, and all attending circumstances
and incidental transactions," is sufficient to entitle the plaintiff to a full
disclosure of the whole subject matter of the bill, equally as if he had spe-
cially interrogated the defendant to every fact stated in the bill.

Where a woman, before her marriage, executed a deed, to which her intend-
ed husband was a party, by which she conveyed all her estate, real and
personal, to C., *in trust,* to her use, until her marriage, and then to such per-
sons and uses as she, with the consent of her intended husband, should ap-
point by deed, or by her last will, without his consent, and the wife retained
the deed during life, and executed a deed to her husband's brother, and,
also, made a will, disposing of her estate, &c. *it seems,* that this deed,

VOL. I.                    I

though it might not be legally valid, on account of some technical objection to its due delivery, would be good evidence of the agreement, and binding on the husband.

The *costs* on exceptions, like costs in all other cases in chancery, are subject to the discretion of the court. But the general rule is, that if the defendant submits to the exception, the plaintiff has his costs; and if they be referred to a master, the plaintiff shall have costs on the exceptions allowed, and the defendant his costs on the exceptions disallowed, and the balance struck is to be paid.

THE bill stated, among other things, that *Mary Jaques*, deceased, late the wife of *J. D. Jaques*, defendant, was, while the widow of *William Alexander*, her former husband, seised of real and personal estate to the amount of 50,000 dollars, derived, principally, from the will of her former husband ; that before her marriage with the defendant, and in contemplation thereof, an indenture was entered into between her and the defendant, and *Henry Cruger*, on the 25th of *September*, 1805, by which she conveyed all her estate, real and personal, to *Cruger*, in trust, for her use, until her marriage with the defendant, *Jaques*, and then to such persons and uses, as she, with the consent of the defendant, should appoint, by deed, or by her will, without his consent ; and if no such uses should be declared, then to *Cruger*, during her life, in trust ; that she should receive the rents, profits, &c. and to lease the lands, &c. and not to be subject to the debts or control of her husband ; that she and the defendant married, and she, afterwards, died; that, during the marriage, the defendant acquired the confidence of his wife, and assumed considerable agency in managing her estate, both real and personal, collecting debts and rents, loaning moneys on bonds and securities, &c. And he appropriated moneys belonging to her, and took securities in his own name, &c. ; and invested moneys in real estate, and took the titles in his own name. That she held a bond and mortgage of *Christian Heyl*, for 8,000 dollars ; that the mortgaged premises were sold, under the mortgage, and purchased by the defendant, and a title taken in his own

name, and the money due on the mortgage allowed to him in payment : and he claimed a right to the premises, which he had improved with other moneys of his wife. That among the notes and securities, taken by him to his own use, was a note of *Thomas Duggin*, for 500 dollars, and a note of *l. Holden*, for 500 dollars, &c.

That, a short time before her death, Mrs. *Jaques*, in part execution of the power, on the 12th of *September*, 1812, conveyed, with the consent of her husband, certain real estate to his brother, *Robert Jaques*, in trust, to sell the same after her death, to give one third of the proceeds to the *Methodist Episcopal Church*, of *New-York*, (plaintiffs,) one third to the children of *Thomas Brown*, and the other third to her husband.

On the 21st of *September*, 1812, Mrs. *Jaques* made her will, and gave legacies to the children of *Thomas Brown*, and others ; and of the residue of her personal estate, she gave one third to the said *church*, one third to the children of *Brown*, and one third to her husband ; and made a similar disposition of her real estate. Her husband, *J. D. Jaques*, was one of the executors, and his two co-executors are plaintiffs. All the executors proved the will. All the specific legacies were paid. The personal estate of which Mrs. *Jaques* died possessed, was alleged to consist of moneys, and securities for moneys, outstanding debts, horses, carriages, and slaves. The defendant, her husband, resided in the house where the testatrix died, and became possessed of her papers, securities, money, &c. and refused to exhibit the same to his co-executors, so as to enable them to take an inventory ; setting up a claim of 12,000 dollars against the estate, for maintaining her, her horses, &c. ; on which account, the co-executors, plaintiffs, allege, they have not been able to make an inventory, &c. They specifically charge, that certain large outstanding debts and securities, due to the testatrix, were in the possession of the defendant, of which he would give no account ; and that he now lives on the estate and income of his late wife ; and

has fraudulently collected debts due to her, &c. And that *Robert Jaques* will not give any account of the real estate so conveyed to him, or of the issues and profits thereof, &c. " *To the end* that the defendants may full answer make, to all and singular the premises, fully and particularly, as though the same were repeated, and they specially interrogated, paragraph by paragraph, with sums, dates, and all attending circumstances, and incidental transactions ; and that the defendant, *J. D. Jaques,* may exhibit the residuary personal estate, in his possession, power, or knowledge, and account for what he has received during, or since the coverture, and specify what real estate she has purchased," &c. &c. ; the plaintiffs prayed, &c. ; and that a *receiver* be appointed, &c.

To the bill, the substance of which is above stated, the defendants put in their joint and several *answer,* to which fourteen *exceptions* were taken by the plaintiffs. The following are those parts of the answer which were particularly excepted to, as being imperfect and insufficient, and as not containing that full, precise, and particular disclosure, which it was the object of the bill to obtain, viz.

1. The defendants admitted, that *Mary Jaques,* before, and at the time of her intermarriage with *John D. Jaques,* was seised and possessed of certain real estates, which they particularize ; and they, also, admitted, that the said *Mary Jaques,* before, and at the time of her said intermarriage, was, also, possessed of, or well entitled to, some personal estate, consisting of slaves, household furniture, horses, carriages, moneys, securities for moneys, and choses in action, but that they did not know, or believe, that the said personal estate was of a large amount or value, or that the whole of the real and personal estate was of the value of 50,000 dollars, and upwards, though they admit it was of considerable value.

2. *John D. Jaques* admitted, that he did, during his cohabitation with the said *Mary,* but at her request, and with her

entire approbation, assume and exercise a considerable agen-
cy in the management of her money transactions, and other
property and effects, real and personal, and, particularly, in
collecting rents and outstanding debts due to the said *Mary*,
and in receiving the interest and principal of the debts due
to her, and loaning out the money of the said *Mary*, but
not on bonds and mortgages ; that he did not recollect, or
believe, that any part of the said business was done by
him in the name of the said *Mary* ; that he kept, and fur-
nished to her, some accounts and memorandums of the said
transactions, and occasionally gave her explanations of
them, as far as the same were required, or deemed necessa-
ry, by her.

3. The defendant also admitted, that the said *Mary* held
a bond from one *Christian Heyl*, of the city of *New-York*,
bearing date the first day of *July*, 1803, conditioned to pay
3,430 dollars, with a mortgage to secure the same, on three
lots and houses, in the city of *New-York*, two in *Warren-
street*, and one in *Murray-street*. That the interest of the
said *Christian Heyl*, in the lot in *Murray-street*, consisted
in a claim of a right to an unexpired lease on the said lot,
under some agreement with an assignee of the said lease ; and
that he also claimed a leasehold interest in one of the lots in
*Warren-street*, and the fee simple in the other lot, subject,
however, to certain prior encumbrances, made by *Heyl*, upon
the lot in *Warren-street*, claimed in fee-simple.

4. That the said *Mary* held another bond of *Heyl*,
dated on or about the 1st of *July*, 1806, conditioned
to pay 2,772 dollars and 75 cents, upon which bond a judg-
ment had been entered. That before any proceedings
against *Heyl*, the said prior encumbrances had been duly
assigned to the defendant, *John D. Jaques* ; and they ad-
mitted that the mortgaged premises were sold under the said
mortgages, and that the leasehold interest of *Heyl* in the
lot in *Warren-street*, was purchased by *William Wil-
merding*, and all the interest of *Heyl* in the other two

1814.

METHODIST
EPIS.CHURCH
v.
JAQUES.

lots, was purchased by *John D. Jaques*, and a title taken in his name, and the mortgaged money was allowed in payment of the premises so purchased ; but that the same was done with the knowledge and approbation of the said *Mary*.

5. That *John D. Jaques* claims an absolute right to the house and lot in *Warren-street*, so purchased by him ; that he received the title therefor, took possession, and still holds the possession, claiming title thereto, in exclusion of the plaintiffs, or any of them ; and he denied that he had, with money belonging to the said *Mary*, or which was secured to her separate use, and which had come into his hands, built upon, or improved the said mortgaged premises so purchased by him, or rendered the same thereby of considerable value.

6. That after the expiration of the lease of the lot in *Murray-street*, or about that time, *John D. Jaques* received a new lease from the lessors in the first lease ; and had, for a fair and valuable consideration, *bona fide* assigned the said lease to *Robert Jaques*, one of the defendants ; and that he has no interest whatever in the said leasehold property, nor has he improved the same, or built on the same, with his own money, or the money of any other person.

7. The defendants further admitted, that the said *Mary*, at the, time of her marriage with *John D. Jaques*, (if the instrument of the 25th of *September*, 1805, was legally executed, and is a valid instrument,) was possessed of, and entitled to, in her own right, divers securities for money, given by persons who were debtors to her at the time of the said marriage ; and before her decease, he obtained from different persons divers other securities for money which belonged to the said *Mary*, and which she had lent to divers persons, &c. And *John D. Jaques* denied that he collected the money due on the said securities, and applied the same to his own use, as distinct from

that of the said *Mary*, or lent out the said money again, in his own name, as his own money, or negligently or improperly lost or wasted the same, or disposed of the same, in any manner, unknown to her, in her lifetime, or that he practised any fraud upon the said *Mary*, &c.

8. 9. The defendants further admitted, that the said *Mary*, at the time of her marriage with *John D. Jaques*, or shortly afterwards, had, or was interested in, the notes of *Thomas Duggin*, *J. Holden*, *William W. Rodman*, Doctor *Romayne*, Doctor *Bruce*, and a draft, or bill, of one *Herman*, as stated in the bill of the plaintiffs ; and that she had a note of *Cotterell & Martin*, for 1,000 dollars, but not of *Cohele & Man*, as stated in the said bill ; and that she had such claims as before mentioned, against *Christian Heyl*, the contents of which notes and securities had been received by *John D. Jaques*, and applied as above stated; and he denied that the said *Mary* had, to his knowledge or belief, any such bond and judgment against the said *Thomas Duggin*, as stated in the said bill ; and that he knew of no securities for money acquired by the said *Mary*, during her said coverture, as stated in the said bill, except those above particularly mentioned or referred to.

10. The defendants further admitted, that *John D. Jaques*, and the said *Mary*, shortly before her death, made and executed to *Robert Jaques*, a certain indenture, described in the bill of the plaintiffs ; to which instrument they referred for greater certainty ; that they do not know whether the said *Mary* did, or did not, intend, by the said instrument, to execute the power supposed to be reserved to her by the instrument of the 25th of *September*, 1805, as alleged in the said bill, nor had they any particular reason to believe that she did intend to execute such power; that he, *John D. Jaques*, by a writing in the conveyance to *Robert Jaques*, intended to express his con-

currence in, and consent to, the disposition thereby made of the real estate of the said *Mary*, without regard to any power supposed to be reserved to her as aforesaid.

11. The defendants denied that all the specific legacies and bequests, made in and by the last will and testament of the said *Mary*, have been paid, delivered, assigned or transferred to the said respective legatees, though the defendants did not know that there was any question remaining, in regard to the said legacies, or any of them.

12. The defendants admitted, that the residuary personal estate of the said *Mary* consisted, except so far as some part thereof which may have been changed since her death, of slaves, carriages, securities for money, and outstanding debts, due to her at the time of her decease, and are now due to her executors. That they do not know which of the said debts, if any, have been received by *John D. Jaques*, (one of the executors of the said will,) without the concurrence, and against the wishes and consent of the other two executors, *Paul Hicks* and *Thomas Brown;* but they cannot admit, if any of the said debts were received by the said *John D. Jaques*, without the concurrence or consent of *Hicks* and *Brown*, that they were therefore improperly received by him.

13. The defendants, *John D.* and *Robert Jaques*, admitted, that the said *Mary* had, prior to her decease, a note of *Richard* and *Isaac Jaques*, for about 1,800 dollars, which was settled prior to her death.

14. That the said *Mary* had, some time prior to her decease, a note of *Thomas Nugent*, for 250 dollars, or thereabouts, which had been delivered by her to some person to collect for her, and never was in the possession of *John D. Jaques*.

It is not thought necessary to state the other parts of the answer, not excepted to, nor to set forth, particularly, the exceptions taken.

The exceptions were referred to a master, who reported thereon, and exceptions were taken to his report, which were argued by *Baldwin*, for the defendants, and *Harison* and *Riggs*, for the plaintiffs.

The counsel for the defendants cited *Mitford's Pl*. 43, 44. 11 *Vesey*, jun. 292, 293. 296. 302, 303. 373. 376. *Barton's Suit in Equity*, 37. n. *Cooper's Equ. Pl.* 315. 2 *Harison's Ch. Pr.* 94.

The plaintiffs' counsel cited 8 *Vesey*, jun., 193. 11 *Vesey*, jun., 290—302. *Cooper's Equ. Pl.* 316, 317. 1 *Har. Ch. Pr.* 302. *Prec. in Ch.* 137. 5 *Term Rep.* 384, 385. 2 *P. Wms.* 243. *Bunb. Rep.* 127. *Mitford's Pl.* 44.

THE CHANCELLOR. This is a bill for discovery and account, called for by the plaintiffs as legatees and devisees under the will of *Mary Jaques*, the former wife of one of the defendants. The case comes before the court on exceptions to the answer, as being, in many respects, imperfect, and not containing a full and explicit disclosure.

Assuming that the answer contains only a partial discovery, and not sufficient to furnish materials for an account, it is alleged, that it contains the allegation of a fact destroying the title to a discovery, at least, to the extent prayed for, and that, until the truth of the fact be ascertained, no further answer can be required. The allegation is, that the deed to *Henry Cruger*, of the 25th of *September*, 1805, was never duly delivered.

The modern cases upon this point are not uniform, nor consistent.

In *Cookson* v. *Ellison*, (2 *Bro*. 252.) Lord Chancellor *Thurlow* laid down the rule, that where a defendant had submitted to answer, he must answer fully, and cannot stop short with a general and partial disclosure; and he said he would not enter into the question whether a demurrer or plea would have been allowed. This rule was again recognised by him, in *Cartwright* v. *Hately*, and in *Shepherd* v.

*Roberts*, (3 *Bro.* 238.,) though the latter case was a bill for an account as partner, and the defendant, in his answer, denied the partnership ; but the Chancellor said he should have pleaded it.

But later cases have very much impaired the force of this general rule, that where a defendant submits to answer at all, he must answer fully.

In *Newman* v. *Godfrey*, (2 *Bro.* 332.,) Lord *Kenyon*, as Master of the Rolls, observed, that where a defendant, by his answer, had denied all interest, and reduced himself to the case of a mere witness, he was not bound to answer the further circumstances of the case ; and he said, explicitly, that the case of *Cookson* v. *Ellison* was wrong. Lord *Loughborough*, in *Jerrard* v. *Saunders*, (2 *Ves.* jun. 454.,) said the same thing, and he ruled, that if a defendant states, in his answer, a purchase for a valuable consideration, without notice, he is not bound to go on and answer as to all the circumstances of the case that are to blot and rip up his title. In the case of *Jacobs* v. *Goodman*, in the exchequer, (3 *Bro.* 488. n.,) Ch. B. *Eyre* held the answer to be sufficient, which denied a partnership, and set forth no account ; for, unless there was a partnership, the plaintiff was not entitled to an account ; but he admitted that there might be cases where the court would require an account, though the principal point in the bill was denied.

So stands the rule on authority ; for though the point was frequently agitated before Lord *Eldon*, in *Dolden* v. Lord *Huntingfield*, *Faulder* v. *Stuart*, and *Shaw* v. *Ching*, (11 *Ves.* 283. 296. 303.,) he expressed no opinion on the point, but seems studiously to have avoided it ; and I should infer from the argument in these later cases, and from the opinion expressed by *Cooper*, in his " *Treatise of Pleading*," that the rule, as laid down by Lord *Thurlow*, was still understood, by the profession, to be the *general* rule, subject, however, to exception in particular cases, such as that before Lord

*Loughborough*, of an innocent purchaser, and of that before Baron *Eyre*, of a denial of the copartnership.

There is nothing, in the present case, that seems to furnish any peculiar objection, on the ground of hardship, or injury, to the disclosure called for. The general aspect of the whole transaction is directly otherwise ; and even admitting the deed to *Cruger* might not be valid in law, on account of some technical objection to its due delivery, yet, as the defendant was a party to that deed, before the marriage, and it was intended to provide for that event, and was retained by the wife, during her life; and that she executed a deed to her husband's brother, and made her will, both of which were cases provided for by the deed, I think it may well be made a question, whether that deed is not, at least, good evidence of the agreement, in equity, and binding on the defendant. The case of *Connel* v. *Buckle*, (2 *P. Wms.* 242.,) would seem to warrant such a conclusion. If the party will put himself upon a fact, as an objection to the call for further discovery, it ought at least, to be a fact which, if true, would at once be a clear, decided, and irresistible bar to the demand.

I do not consider this to be such a case, and this objection to the exceptions fails ; but the benefit of every objection to the relief, sought on the ground of the non-delivery of the deed, is reserved to the defendant upon the hearing.

The mere objection to a further discovery is, that the bill contains no special interrogatories. The bill contains the general interrogatory, " that the defendants may full answer make to all and singular the premises, fully and particularly, as though the same were repeated, and they specially interrogated, paragraph by paragraph, with sums, dates, and all attending circumstances, and incidental transactions." The question, then, is, whether this be not sufficient to call for a full and frank disclosure of the whole subject matter of the bill ; and I apprehend the rule on this subject to be, that it is sufficient to make this general requisition on the defendant, to answer the contents of the bill, and that the interrogating

1814.

part of the bill, by a repetition of the several matters, is not necessary. The defendant is bound to deny or admit all the facts stated in the bill, with all their material circum-stances, without special interrogatories for that purpose. (*Mitford*, 44. *Cooper's Pl.* 11, 12.) They are only use-ful to probe more effectually the conscience of the party, and to prevent evasion or omission as to circumstances which may be deemed important; but it is no excuse for the de-fendant, in avoiding to answer fully to the subject-matter of the bill, that there were no special interrogatories applicable to the case. Plain sense, and a good conscience, will, without any difficulty, in most cases, teach a defendant how far it is requisite to answer to the contents of the bill, and to meet the *gravamen* alleged; and it is certainly desirable to avoid, if possible, the expense, and the prolixity of repeating, in the same bill, every material fact. It is well under-stood, that if the defendant be specially interrogated, it can only be to the facts alleged and charged in the bill. The one cannot be more extensive than the other.

Having, then, cleared this case of the technical objections, which were raised to the call for a better answer, I come to the exceptions themselves, and, without going minutely into the consideration of the several exceptions, I think the an-swer essentially defective. The charges are not met parti-cularly and precisely. The defendant speaks in a general and loose manner, and evidently does not give the best in-formation in his power, nor such a full and particular dis-covery as the nature of the bill requires. The rule laid down in the books is, that the defendant must answer speci-fically to the specific charges in the bill, and give the best account he can, so as to enable the plaintiff, if he calls for an account, to possess materials to state an account. (8 *Ves.* 193.) What circumstances, connected with the facts charged, are material and proper to be disclosed, must depend upon the nature and reason of the case, and will, generally, be easi-ly ascertained by the exercise of ordinary sense and discre-

tion. The detail of attending circumstances is not to be so minute as to become burdensome and oppressive, nor so general as to withhold any information, material and proper for the case. The good sense of the pleader, and the nature of the subject, must determine the extent and application of the rule.

Under these impressions, I have compared the answer with the bill, and the exceptions with the answer, and in my judgment, they are all, except the 10th, well taken, and must be allowed. As to costs on exceptions, they are like costs in all other cases in this court, subject to its discretion, and may be given or withheld, according to the exigency of the case, or they may be left to abide the event of the suit. But the general rule is, that, if the defendant submits to the exceptions, the plaintiff has his costs, and if they be referred, the plaintiff shall have the costs of the exceptions allowed, and the defendant his costs of the exceptions disallowed, and the balance struck to be paid. (1 *Schoales & Lefroy*, 241. 2 *Atk.* 551.)

Exceptions allowed.