## PURYEAR and WALLACE v. BEARD, Trustee.

1. When an issue has been tried in a superior court, ascertaining that a will was duly executed, and an order is made, directing the probate court "to take the probate of said will, and register the same," it is competent for the probate court to receive the record of the trial in the superior court as conclusive evidence of the validity of the will.

2. The probate of a will, in one State, will be admitted in the courts of another, without proof of the statute which gives the foreign court jurisdiction, upon the proceedings being authenticated pursuant to the act of Congress.

3. An indorsement on a deed, that it was proved before R. Strange, who styles himself one of the judges of the superior courts of law and equity, in and for the State aforesaid, does not show that the deed was recorded according to the law of North Carolina, there being no proof in the court below, of the law of North Carolina, of the manner in which deeds may be proved for registration.

4. Proof that a deed was duly executed, includes the fact of delivery, the deed conveying slaves to one in trust, and he may maintain an action for their recovery, against a wrong doer.

5. It is not indispensable to a valid bequest of a chattel, that the testator should have the actual possession.

6. A trust, which is fraudulent and void, as against the creditors of the parties to the fraud, cannot be avoided for that cause, by the creditors of one obtaining possession of the *cestuis que trust.*

7. A gift, or sale by a married woman, of her separate estate, will not impair the title of the trustee in a court of law. The retention by one, for more than three years, of personal property under a verbal loan, from a married woman, of her separate estate, will not subject the property to the payment of the debts of the loanee, in a court of law.

16

Error to the Circuit Court of Conecuh.

DETINUE for four slaves, by the defendants in error, as trustee for Rebecca Mitchell, and her children, before the Hon. E. Pickens.

From a bill of exceptions, found in the record, it appears, that the plaintiff, to establish the probate of the will of Elizabeth Barge, offered certain transcripts from the records of the court of pleas and quarter sessions, and of the superior court of law for Robeson county, North Carolina.

The former shows the offer of the will of Elizabeth Barge for probate, by Charles B. Jones, executor—a caveat thereto by George Wilcox, claiming to be next of kin, and a prayer for an issue of *devisavit vel non;* and thereupon it was ordered that the same be transmitted to the next superior court of the county, for a trial of the issue.

The transcript then contains the copy of the will of Mrs. Barge, the second clause of which contains a bequest of the mother of the slaves sued for, (together with others,) to Rebecca C. Mitchell, during her natural life, and after her death for the sole use and benefit of her children, to be equally divided, share and share alike.

Then follows an entry, as follows:

*Robeson county—May Term,* 1832.

On motion, Charles B. Jones qualified as executor of the last will of Mrs. Barge, agreeably to a writ of *procedendo,* from the superior court of law of the county, issued at the last term, and it is ordered that said will be, according to said writ, recorded in the book of wills.

To this is added the attestation of the clerk, and the certificate of the presiding magistrate.

The transcript from the superior court of law contains a statement of the issue to be tried, the impaneling of a jury, and their verdict, finding "that the paper writing offered for probate, is the last will and testament of Elizabeth Barge, and that she did devise as follows, to wit:" Here is inserted a copy of the will, and the following judgment: " Ordered by the court, that a *procedendo* do issue, to the county court

to take the probate of said will, and Register the same, together with these proceedings." To which is appended the attestation of the clerk, and the certificate of the presiding judge.

The plaintiff also produced, and read, a decree of the superior court of equity for Robeson county, North Carolina, by which the plaintiff was appointed trustee, under the will of Elizabeth Barge, in place of Charles B. Jones, and directing the latter to deliver over the slaves mentioned in the bill, and convey the same to him by deed, declaring the same trusts for the benefit of the complainant, which are contained in the will of Elizabeth Barge ; the said deed to be approved by the clerk and master, and proved and registered in the county of Robeson.

The plaintiff also offered the deed, required to be executed by said decree, dated the 5th February, 1835, and there was evidence tending to show, that the deed at its date, was duly executed.   Upon the deed was indorsed the following :— Feb'y 9th, 1835—State of North Carolina.   This 9th of February, 1835, before me, Robert Strange, one of the judges of the superior court of law and equity, in and for the State aforesaid, came W. F. Strange, Esq., the subscribing witness to the within deed, and proved the due execution thereof.   Let it be registered.           Ro. Strange.

Registered in book W, p. 181.   Robeson county, North Carolina, Feb'y 10, 1835.   Thos. A. Norment, Register.

Recorded in book A, p. 123 to 125, Dec'r 31, 1835.

Attest,           Sam'l McColl, cl'k, by C. H. Foster.

There was evidence tending to show, that Ro. Strange, whose name appears to said certificate, was judge as there stated, and it was admitted that McColl was clerk of Monroe county court, and that the certificate was genuine. Also, that the plaintiff came to Monroe county, about that time, bringing with him the slaves, and that Mrs. Mitchell and her family came also.

The plaintiff also read a duly authenticated copy of a statute of North Carolina, one clause of which is as follows :— "No mortgage, deed or conveyance in trust, for any estate, real or personal, shall be good and available, in law, against creditors, or purchasers for a valuable consideration, unless

the same shall be proved and registered, in the manner already prescribed by law, in the case of conveyances in trust, but all deeds not so proved and registered, shall be void," &c.

The defendants offered evidence tending to prove, that in 1837, James McClure intermarried with Betsy Anne, daughter of Thomas and Rebecca Mitchell—that soon after the marriage, McClure and his wife went to his mother's, and the wife of McClure being sick, Mrs. Mitchell sent the slave, Mary Ann, to them, where the slave remained until McClure, about March, 1838, removed to his own residence, whither the slave accompanied them, and remained until she was levied upon, in virtue of a judgment against McClure, in favor of the defendant, Wallace, when the defendants, at a sale by the sheriff, became the purchasers. That some time after McClure moved home, Mrs. Mitchell went to live with him, and proof was offered, that she had said she had given the slave, Mary Ann, to Mrs. McClure, her daughter.

It was also testified by one witness, that Mitchell stated, he had been involved in North Carolina, and had made a pretended sale of the slaves named in the will of Mrs. Barge, to the then husband of Mrs. Barge, with the understanding, that he should secure the property for the family. There was no evidence that Barge did any act in regard to the alledged arrangement, nor was there any proof, that either himself, or his wife, Elizabeth Barge, ever had possession of the slaves. The defendants objected to the deed from Jones to the plaintiff, as a duly proved and recorded deed, but the court overruled the objection, and the defendant excepted.

The court charged, that the probate of the will of Elizabeth Barge was sufficient.

The defendants moved the court to charge, that if Elizabeth Barge had not possession of the slaves, at or before her death, she could not dispose of them by will. That if there was a fraud in the creation of the trust, the creditors of any of the parties in the possession of the property, may show the fraud, and recover against the trust. That in this action, the defendants may show title, and right of possession in any other person than the plaintiff, and if such title be shown the plaintiff cannot recover. That the wife may dispose of her separate

estate, with the assent of her trustee, and without the consent of her husband. That in the action of detinue, when the taking is not tortious, and there are two or more defendants, the finding must be against all, or none. These charges the court refused to give, and the defendants excepted, and now assign the matters of law, arising out of the bill of exceptions, for error.

T. H. WATTS, for the plaintiffs in error, made the following points:

1. The probate of the indenture made by Jones and Beard was not sufficient to authorize it to be admitted to record in N. Carolina. The certificate of Ro. Strange is not full enough.

2. The proceeding in the court of quarter sessions, and the proceedings in the superior court of Robison county, N. C., do not show that the will of Elizabeth Barge was ever admitted to probate. After the trial of the issue of *devasavit vel non*, the superior court ordered a *procedendo* to issue to the county court to take the probate of the will, &c. The subsequent proceedings in the common pleas and quarter sessions, do not show any probate as required by the said writ of *procedendo*. The will is ordered to record without probate.

3. But it is considered, from the bill of exceptions, that the contract between James Mitchell and Lewis Barge was an executed one, so as to pass title to him, as between the parties. Then on his death, the title passed to his heirs— and his widow, Elizabeth Barge, had no right to convey by will. And if she had no right to convey by will, of course the trust deed made in accordance therewith, conveys no title, and the title is still in the heirs of Lewis Barge; and the plaintiff has no right to recover. Tanner v. Allison, 3 Dana, 422.

4. If there was fraud in the creation of the trust, no title was conveyed thereby, as against the creditors of any person in possession of the slaves. See Stratton v. Minnis, 2 Munf. 329.

5. In an action of detinue, as in ejectment, plaintiff must recover on the strength of his own title. Bell and wife v. Hogan, 1 Stew. 536. And the defendant may defeat the ac-

tion by showing title in a third person.   See Tanner v. Allison, 3 Dana, 422.

6. A wife has the power to sell, or otherwise dispose of her separate property, without the consent of her husband, as though she were a *feme sole*.   See Clancy H. & W. 282; Lomax Ex. 12.

7. In the action of detinue, when the taking is not tortious, the finding of the jury must be against all the defendants, or against none.   See Salter v. Pearce, 4 Ala. 669.

F. S. BLOUNT, for the defendant in error.

1. The deed from Jones to Beard was duly proved and recorded as required by the laws of North Carolina.   Revised Stat. N. C. p. 224, § 1; 231, § 23.   Such a deed accompanying trust property into this State, may be recorded here without further probate.   Clay's Dig. 255, § 4; Swift v. Fitzhugh, 9 Porter 40.

2. The due and proper proof of the execuiion of the will of Elizabeth Barge was shown by the certificates and transcripts.   The probate in all respects corresponds with the requirements of the laws of North Carolina.   See Rev. Stat. N. C. 620, § 4; 621, § 5, 6; McNeil v. McNeil, 2 Dev. Rep. 393; White v. Strother, 11 Ala. 720.

3. The declarations of James Mitchell, tending to prove that Elizabeth Barge had never had possession of the negroes, and the other matters connected therewith, as set out in the bill of exceptions, are not evidence.   If competent, he should have been introduced as a witness, and sworn.

The charge, as asked, was properly refused.   A party may give or devise a title to personal property, although the possession is in another, who holds under him, as in case of bailment.   Taking possession, and holding under a will and deed, gives color of title, and detinue, or trover, may be maintained on the possession.   The title is sufficient until a better is shown.   2 Phil. Ev. 226.

4. The fourth assignment in error is based upon the assumption of fraud committed by James Mitchell, and proved by his declarations.   Independent of the fact, that he is not a party to these proceedings, and that his declarations are not

evidence, the proof shows that the property was brought to this State by the defendant in error, (Beard,) and a registration of the trust deed in the county of Monroe, (if it were necessary for a deed of this kind to be recorded,) was a notice to all the world of the trustee's title.    The question as to whether James Mitchell committed a fraud, was not involved on the trial in the decision of this cause, and the court properly withheld the charge.  Fortner v. Flanagan & Driver, 3 Porter, 257; Randall v. Parramore & Smith, 1 Branch (Florida) Rep. 409.

5. The fifth assignment of error is the refusal of the judge to give a charge, "which charge the court refused to give, not deeming the question raised by the evidence," in the language of the bill exceptions.   An inferior court will not be held to have committed error in refusing a charge, no ground to sustain which has been laid by the evidence.— Chamberlain v. Darrington, 4 Porter, 515; Hughes v. Parker, 1 Porter, 144.

6. The bill of exceptions presents no evidence upon which the right to ask this charge was founded.   The same remark may be applied to the eighth assignment.   The legal title to the trust property being in the trustee, no disposition of the property inconsistent with the terms of the deed creating the trust could be made legally, with his consent. The bill of exceptions does not show that he consented to a disposition of this property of the estate, but the record discloses that upon being illegally and wrongfully deprived of the possession, he instituted this action to recover back the trust property.   Vendee or donee of Mrs. Mitchell would have no legal right.   Jones v. Strong, 6 Iredell, 367; Merritt v. Wimpley, 3 Devt. 399.

COLLIER, C. J.—The exemplification of a copy of the record by which it was proposed to show the probate of the will of Elizabeth Barge, states that the will of the testatrix was offered for probate to the court of pleas and quarter sessions of Robeson county on the fourth Monday of May, 1831, by the executor, Charles B. Jones.   Whereupon, George Wilcox, claiming to be next of kin and heir at law of the testatrix, prayed to enter a *caveat* to the probate; and an is-

sue of *devisavit vel non* was ordered to be made up and transmitted to the next superior court of that county for trial, &c. At the term of the superior court holden in March, 1832, the issue was tried by a jury, who affirmed by their verdict the validity of the will: thereupon a *procedendo* was ordered to issue to the court of pleas and quarter sessions to take the probate and register the will, together with the proceedings of the superior court.

It is shown by the record of the pleas and quarter sessions, that Charles B. Jones, qualified as the executor of Mrs. Bárge's will agreeably to the *procedendo* in May, 1832, and that the will was recorded. Both the transcripts are certified pursuant to the act of Congress of May, 1790; in each of them the will is set out *in extenso*, and in one of them the verdict of the jury upon the issue submitted to them.

It is insisted that as the inferior court was commanded by the *procedendo* not only to register, but to take the probate of the will, it should affirmatively appear that this mandate had been obeyed by causing proof to be made *per testes*, to entitle the will to be received as evidence. This argument cannot be maintained. The object of the proceedings in the superior court was to test the validity of the will, and the verdict, with the order thereon, very satisfactorily established it. These should, and doubtless were regarded by the common pleas and quarter sessions, as conclusive of its genuineness, and authenticity. The order under which the *procedendo* issued, would perhaps have been more accurate, if it had required the verdict to be certified to the probate court, without giving specific directions as to the proceedings thereon; unless its form was prescribed by some statute or rule of court. But be this as it may, it was altogether competent for the inferior court to have received the record of the trial, as evidence conclusive of the validity of the will, and dispensed with the examination of witnesses. In fact, the litigation superinduced by the *caveat* was directly upon the point to which the witnesses would have been examined; the finding of the jury and consequent order was *res adjudicata*, and superseded, if it did not necessarily exclude, an inquiry into the facts which were determined by the verdict.

The probate of a will is a judicial proceeding, and when

made in one state, will be admitted in the courts of another, upon being authenticated pursuant to the act of Congress; and being so proved, will avail without the formal proof of the statute which gives the foreign probate court jurisdiction. Balfour v. Chew, 5 Mart. Rep. N. S. 517; Johnson v. Rannels, 6 Id. 621; Thomas v. Tanner, 6 Monr. Rep. 53; Robertson v. Barbour, Id. 527. In Ripple v. Ripple, 1 Rawle's Rep. 386, the probate of a will certified by the clerk and presiding justice of the county court of a county in Virginia, as directed by the law of the United States, was held to be admissible evidence, though it was objected that the statute authority of the court in such case should also have been proved. The court said, that although the laws of a sister state could not be noticed without proof of them, yet the acts of its courts might indicate their exposition. That the maxim, *omnia præsumunter rite esse acta*, is as applicable to the act of the county court in taking jurisdiction of the subject of probate, as it is to judicial proceedings in the courts of a sister state where it is offered in evidence. See also Westcott v. Cady, 5 Johns. Ch. Rep. 334; Brown v. Lanman, 1 Conn. Rep. 467; Spencer v. Spencer, 1 Gall. R. 622; Laughton v. Atkins, 1 Pick. Rep. 535; Allen, adm'r, v. Thaxter, 1 Blackf. Rep. 399; Ex parte Povall, 3 Leigh's Rep. 816. See further 3 Phill. Ev. C. & H.'s Notes, 857 to 865, 1347, *et seq.*, where the effect of a probate in general, when offered in a domestic, or extra territorial jurisdiction, as well of real as personal estate, is largely considered by the learned annotators. No exception has been taken to the manner in which these transcripts are authenticated, and they were rightfully admitted, as sufficient evidence that the will in question was regularly proved, and that Charles B. Jones was qualified as its executor.

The deed from Jones to the plaintiff, as a trustee for Mrs. Mitchell and her children, recites the decree of the superior court of equity of Robeson county, North Carolina, as the authority for its execution, and appears to conform to its requirements. There can be no doubt but the execution of this deed was proved at the trial; for the bill of exceptions recites that "the original deed, made under, and in virtue of

the decree, with the several entries or indorsements thereon, was produced," and evidence was offered tending to show that it was duly executed, as it imports, on the day of its date. The question, then, upon this branch of the case, is, does it appear that the deed was registered as directed by the decree, or required by the laws of North Carolina? Conceding that the indorsements of approval, proof of execution, and registration, would be considered competent in that state to establish these facts, and would be admissible evidence of them, if the deed had been executed here, still it may be asked, if in themselves, or aided by the statute which is found in the record, our courts can regard them as proof of registration there? This question must be answered in the negative. If the indorsements on the deed are matters of record in North Carolina, susceptible of authentication, so as to be used as record evidence in a sister state, they are not authenticated according to either of the acts of Congress upon the subject, or proved in any other manner to be genuine and authentic. It is not competent for us to look into the statute book of another state to ascertain what its legislature have enacted; but its enactments must be proved as facts in the primary court, and so appear from the record to authorize us to consider them. The statute of North Carolina, which is made part of the bill of exceptions, does not prescribe the mode of proving and recording the instruments to which it refers, but merely directs that they shall be proved and registered according to pre-existing laws, about which we are wholly uninformed. How is it possible, under this state of the proof, to affirm that the deed has been duly recorded? There is no evidence that the master in equity and registers made the *indorsements* over their respective names, even if such evidence could supply the defect. The official character of the officer who took the proof of the deed, was shown by parol testimony, but in the absence of the local law under which he acted, and proof of the genuineness of his signature, this does not establish the regularity of his certificate, and certainly the certificate proves nothing in respect to the registration. See 3 Phil. Ev. C. & H.'s Notes, 1125 *et seq.*; 1241, 1257 *et seq.*

In Ross v. Durham, 4 Dev. & Bat. Rep. 54, it was decided

that the execution of a deed includes delivery; and when it is stated of a deed as a fact that "its execution was proved," it must be understood that such evidence was adduced as established its delivery *prima facie.* So, where a party signs and seals a deed in the presence of witnesses, and it is afterwards at his instance proved and registered, this amounts to a delivery, though the execution was in the absence of the grantee, in whose possession the instrument was never actually placed. Snider v. Lackenour, 2 Ired. Eq. Rep. 360. These decisions authorize us to intend that the deed was not only signed and sealed by Jones and Beard, as it purports upon its face, but that it was also so delivered as to place its revocation beyond their power. The decree, it will be observed, directs the executor of Mrs. Barge's will to convey certain slaves, among which are those now in question, to sell a tract of land and pay over the proceeds to the plaintiff as a trustee for Mrs. Mitchell and her children; and the deed which is executed professedly under its authority conveys the slaves, and declares that they are delivered, states that the land has been sold and the proceeds paid over to the substituted trustee. In addition to the evidence afforded by the deed, it was proven on the trial that the plaintiff brought the slaves with him to this state in 1835. Do these facts show *prima facie* that the plaintiff had such a legal title as authorized him to sue for their recovery, if they were wrongfully taken from the possession of Mrs. Mitchell? The direction at the close of the decree that the deed should be approved by the clerk and master, and registered, was not an observance indispensable to pass the title from the executor and vest it in the plaintiff, on the same terms on which he was its depository. Unless this direction was complied with, perhaps the decree could not be considered as completely executed, and the court might coerce a compliance or assert its control over the property. But the executor in virtue of the will, and his qualification under it, had a legal estate, which under the sanction of the decree, if not independent of it, he could transfer; and his transferee could maintain an action against any one who would take possession of the property without a right to hold it. In respect to the necessity of registration, it need only be remarked, that if its omission could

under any circumstances prejudice the rights of the *cestuis que trust*, one of whom was a *feme covert*, and the others perhaps in their minority, the defendants cannot take advantage of it. The act of North Carolina, which is before us, merely avoids deeds not duly registered as against creditors and purchasers—and the defendants were not creditors of the grantor or the *cestuis que trust*, nor purchasers from them.

It is certainly not indispensable to a valid bequest of a chattel, that the testator should have had the actual possession of it; more especially if his right is admitted by those who stand in a predicament to controvert it. But giving to the testimony the fullest effect that can be claimed for it, and it does not negative the fact of the testatrix and her husband's possession under the pretended sale to the latter, by Thomas Mitchell. If, however, it be conceded the want of possession was shown, it cannot render the bequest inoperative, if the fraudulent vendor submitted the slaves to the disposition of the will. The sale by that act would be consummated and valid against him, although it might be invalid against his creditors, on the ground that it was intended to delay, hinder and defraud them; but it would be good against all persons not claiming as a creditor or purchaser of the *vendor*. As the defendants do not come within either of these categories, they cannot insist upon the fraud as giving them a right paramount to the legatees under Mrs. Barge's will.

The assumption of the defendants, that if Thomas Mitchell and Lewis Barge perpetrated a fraud in the pretended sale by the former, that the slaves might be settled on the family of the latter, and in pursuance of such an understanding, Mrs. Barge consummated the trust by her will, then the creditors of any party in possession of them may show the fraud, and the trust will not protect them from liability to such creditors, cannot be supported. True, if the transaction was fraudulent as supposed, the transfer of the slaves would be void against the creditors of Mitchell; but if it was acquiesced in by them, the creditors of a party who might acquire the possession under the *cestui que trust*, could not subject the property to liability to pay the debts of such a party.

Puryear and Wallace v. Beard, Trustee.

This conclusion is too obvious to require illustration, and is sufficiently argued by stating it.

Possession of a chattel is *prima facie* evidence of property in the possessor; but if the plaintiff has never had possession of the chattels, or if the contest be not with a mere stranger, but with one who will succeed in his proof of title, unless the plaintiff can prove a better, it is necessary for the latter to resort to strict evidence of title. If, therefore, the action be brought against a wrong doer, the mere fact of possession by the plaintiff is usually sufficient evidence of title, although the plaintiff claims under a title which is defective; for the possession of property is *prima facie* evidence of ownership. Traylor v. Marshall, 11 Ala. Rep: 458. In Tanner v. Allison, 3 Dana's Rep. 422, it was decided that in detinue it is allowable to show the title is not in the plaintiff, but in a stranger. Whether such testimony is admissible where the defendant has acquired possession tortiously, or does not connect himself with the third person, we will not stop to inquire: and as there is nothing in the record from which it can be inferred that any one else had a right to the slaves, paramount to the plaintiff or defendants, it is unnecessary to consider the particular character of the defendants' possession. Admitting the sale by Thomas Mitchell was intended to defraud his creditors, yet we have seen that as he parted with the possession, and the defendants do not claim through his creditors, or as a purchaser from him, the fraud is immaterial in the present case; and the court might very well have refused to charge that the plaintiff could be defeated if defendants showed title in a third person, on the ground that such an instruction would have been abstract. It cannot be assumed that Lewis Barge left other distributees than his wife who are entitled to the slaves in question, and that therefore Mrs. Barge's will is *pro tanto* inoperative. The possession of her executor is *prima facie* evidence that the title was transmitted by her will, and if it were allowable to institute an inquiry on this point, the *onus* of disproving this presumption devolves on the defendants.

In respect to the settlement or bequest of property to the separate use of a married woman, it must be remarked that the common law will not allow her to possess personal pro-

perty, independently of her husband, but a court of equity will uphold a trust for her sole benefit, and see that it is strictly performed. She may dispose of her separate estate as she pleases—may give or sell it to her husband, may sell it to her trustee, deal with a stranger in respect to it, and it is chargeable by her written engagements; unless the mode of enjoyment is prescribed in the creation of the estate, or her powers over it restricted. But this right of the wife thus to charge or dispose of her separate property, is only recognized and enforced in equity. Clancy on H. & W. 251, 271, 332, 337, 343 to 347, 350 to 356, 612; 2 Story's Eq. 606, 614 to 624; Hoot et al. v. Sorrell et al. 11 Ala. R. 386; Jacques v. Methodist Epis. Church, 17 Johns. Rep. 548; same, 1 Johns. Ch. Rep. 65, 450; 2 Id. 543; 3 Id. 77; Demerest v. Wyncoop, Id. 129; Murray v. Barlee, 4 Sim. Rep. 82; Headon v. Rasher, McC. & Y. Rep. 90; Vizoneau v. Pegram, 2 Leigh's Rep. 183; Morgan v. Elam, 4 Yerg. R. 375; Long's adm'r v. White's adm'r, 5 J. J. Marsh. R. 230; Bennett v. Oliver, 7 G. & Johns. Rep. 192; N. A. Coal Co. v. Dyett, 7 Paige's Rep. 9; same case, 20 Wend. Rep. 570; Gardner v. Gardner, 7 Paige's Rep. 112; same case, 22 Wend. Rep. 526; Keene v. Johnston, 1 Jones & C. Rep. 255.— Conceding the facts show, that Mrs. Mitchell gave the slaves in controversy to her son-in-law, or that he retained the uninterrupted possession of them for more than three years, in virtue of a verbal loan, which, under ordinary circumstances would subject them to the payment of his debts, yet these facts if available, must be regularly stated to a court of chancery, as a ground of relief. A court of law, which considers the capacity of the wife to act in respect to her property, as merged by her marriage, will not regard them as impairing the legal estate of the trustee. The ruling of the circuit court upon this point, whether correct in the abstract or not, could not prejudice the defendants; for it could not aid their defence in the present posture of the case to show that Mrs. Mitchell had made a disposition of her separate estate for life, which a court of equity would sustain.

The proof in the cause very clearly shows, that although the defendants purchased the slaves at a sale by the sheriff, under execution, yet the possession was not changed by con-

tract with the plaintiff; consequently, as it respects the plaintiff, the taking and detention must have been tortious, if he has the superior legal right. Upon this point there is no conflict in the evidence, and nothing on which to rest the hypothesis in the prayer for instructions, that the taking was not wrongful. The refusal to give the charge in the form in which it was prayed, must have impressed the jury with the opinion that it was competent to find for or against either, or both the defendants, according as the facts warranted, without reference to the manner of the original taking; and the verdict indicates that the jury supposed both were liable. Whether the verdict is supported by the facts or not, is not a question presented for revision; but it shows that no injury has resulted to the defendants from the refusal to charge the jury as prayed; and even if it should have been given, it is not a fatal error. Our conclusion, upon a view of all questions raised, is, that the judgment of the circuit court must be affirmed.