## JENKINS vs. McCONICO, ADM'R, &c.

| 26 | 213 |
| 124 | 342 |

1. A deed of gift, executed in Virginia in 1824, conveying certain slaves, in consideration of natural love and affection, to the grantor's daughter, then a married woman, " and the lawful heirs of her body," contained this clause— " I do bind myself, my heirs, &c., *to make to the above named property a clear and undoubted a right, as much so as can be made by word or deed, from the claim and claims from every person or persons whatsoever,* to my said daughter and her lawful heirs as above mentioned": *Held,* that the deed created a separate estate in the wife, and excluded the husband's marital rights.

2. If a party reads in evidence to the jury a certified copy of a deed which purports to have been executed by husband and wife, without any attempt to limit its effect as proof, he thereby concedes its genuineness, and cannot be heard, in an appellate court, to say that it was not proved ; although, according to the memorandum endorsed on it by the clerk of the court in which it was recorded, it was admitted to record on the acknowledgment of the husband alone, and the party against whom it was offered " admitted that the original had been executed, proved, acknowledged, and recorded, as endorsed and certified on said copy."

3. Where personal property is conveyed directly to the wife, to her sole and

separate use, she and her husband may, by their joint deed, vest the legal title in trustees for their use and the use of the survivor for life ; and the husband, surviving, may set up such deed to defeat an action of trover brought against him by the wife's personal representative.

4. An admission that a deed was executed implies that it was delivered, and a delivery of the deed dispenses with the necessity for a delivery of the property conveyed by it.

5. If the husband sell or dispose of the wife's separate personal property without her consent, express or implied, her right of action is suspended during coverture only : if she survive, she may sue his personal representative for the conversion ; and if he survive, her personal representative may sue him.

6. In trover, when the thing converted has a fixed value, the true measure of damages is that value at the time of conversion, and the jury may give interest upon it ; and if the value is fluctuating, the jury may take its highest value at any time between the conversion and the trial.

APPEAL from the Circuit Court of Sumter.

Tried before the Hon. ALEX. B. CLITHERALL.

TROVER (under the Code) by the appellee, as administrator of Mrs. Janette Jenkins, deceased, against her husband, Richard Jenkins, for the conversion of twenty-one slaves, which the plaintiff claimed, as the separate property of his intestate, under a deed of gift from her father, John Williams, of which the following is a copy :

"I, John Williams, of the county of Henrico, and State of Virginia, for the great love and affection I *bare* for my daughter Janett Jenkins, now the wife of Richard Jenkins, I give to her, the said Janett Jenkins, and the *lawfull* heirs of her body, the following property, as followeth, *to-witt:* four negroes, by the names of *Pheba*, Susan, Wilson, and *Moriah*, and their increase, forever ; to the proper use and behoof of my daughter Janett Jenkins, and her heirs, as above mentioned. I do bind myself, my heirs, &c., to make the above named property a *clair* and undoubted a right, as much so as can be made by word or deed, from the claim and *claimes* from every *purson* or *pursons whatsever*, to my said daughter and her *lawfull* heirs, as above mentioned. Given from under my hand and seal this *tweelvth* day of February, 1824.

"In presence of                    "John Williams    [ seal ]".

        J. P. Camden,
        Wm. Carter,
        Mitchell W. Bradley."

" On the trial of the cause, on the plea of not guilty, the plaintiff read to the jury the following evidence :

"1. Interrogatories of the plaintiff to the defendant, and the defendant's answers thereto," which are, in substance, as follows : He was married to Janette Williams, the daughter of John Williams, in Henrico county, Virginia, on the 14th February, 1822 ; and at the time of their marriage, said John Williams was the owner of certain slaves, named Phebe, Susan, Wilson, and Maria. The original deed of gift, by which John Williams conveyed said slaves to said Janette, is not in his possession, nor does he recollect that he ever had it in his actual possession ; it was admitted to record in the County Court of Henrico county, Virginia ; believes the copy appended to the interrogatories to be a correct copy. The deed of trust from respondent and wife, hereinafter more particularly described, is not in his possession, nor under his control ; the negroes Susan and Eliza, therein mentioned, are two of the slaves conveyed by said deed of gift from John Williams ; " he supposes, seeing the copy appended, that he did execute the paper, but does not recollect having done so ; he requires the paper to be duly authenticated and proved ; does not know where the original is ; does not know whether the said paper is or is not a correct copy of the paper of which it purports to be a copy, nor whether it was executed by the other parties thereto signed." He sold Maria in 1824 or 1825, and Wilson in 1827 ; Mrs. Jenkins did not unite in the bill of sale ; all the other slaves are in his possession, or under his control ; they are the same slaves, together with their increase, originally conveyed by said deed of gift ; Eliza was born in May, 1824, and the children of Susan were born after the 12th February, 1824 ; a demand of said slaves was made before suit brought ; said original deeds were executed, if at all, in Henrico county, Virginia, and respondent supposes are there recorded.

" 2. The copies attached as exhibits to the interrogatories ; which were admitted in evidence, in lieu of the originals, by consent of the defendant's counsel ; and the defendant admitted, also, the originals of said copies had been executed, proved, acknowledged, and recorded, as endorsed and certified on said copies." The exhibits here referred to are as follows :

1. A copy of the deed of gift from John Williams, above set out, to which is appended the certificate of the clerk, in these words :

"In Henrico County Court, Clerk's Office, February 16, 1824. This indenture was proved by the oaths of J. P. Camden, Wm. Carter, and Mitchell W. Bradley, the witnesses to the same, and admitted to record. Teste J. B. Whitlock, C. H. C.

"A copy. Test. Loftin N. Ellett, C. H. C."

2. A copy of a deed, dated November 14, 1827, by which Richard Jenkins and his wife Janette conveyed two slaves (Susan and Eliza) and some other personal property, "for and in consideration of the natural affection which they bear towards their daughter Anne Richard Jenkins, and also for any child or children which may hereafter be born," to Jordan P. Camden and Samuel T. Williamson, as trustees, upon the following trust : "That the said Camden and Williamson, their heirs, executors, and administrators, shall permit the said Richard Jenkins and Janette his wife, during their natural lives, or the natural life of the survivor of them, to remain in quiet and peaceable possession of the aforesaid slaves, and their future increase, and other personal property hereby conveyed, and to take the profits thereof to their own use during their lives." This deed purports to have been signed by all the parties, viz., Richard Jenkins, Janette Jenkins, J. P. Camden, and Samuel T. Williamson, in the presence of two subscribing witnesses ; and the following certificate is annexed to it :

"In Henrico County Court, Clerk's Office, December 22, 1827. This indenture was acknowledged by Richard Jenkins, a party to the same, and admitted to record. Test. Loftin N. Ellett, C. H. C.

"A copy. Test. Loftin N. Ellett, C. H. C."

"3. The depositions of Mrs. Kimbrough and Mrs. Ferrell."

Mrs. Kimbrough's testimony, in substance, may be briefly stated as follows : She is the daughter of said John Williams, and sister of Mrs. Janette Jenkins ; Richard and Janette Jenkins were married at her father's house, in Henrico county, Virginia, in the year 1822 ; at the time of said marriage said John Williams owned certain negroes, named

Phebe, Susan, Wilson, and Maria, which went into the possession of said Jenkins and wife shortly after their marriage; does not recollect exactly how long they remained in said Jenkins's possession, but thinks it could not have been more than twelve or eighteen months before he sent them back to her father; a short time after they were sent back, they again went into the possession of Jenkins; knows that Jenkins was acquainted with the manner in which her father intended the negroes should go, "because, as before stated, he became offended because they were not given to him to do with as he pleased"; recollects that Jenkins came after the negroes himself the second time they went into his possession, and, as witness then understood, took them home again upon the terms on which her father was willing to give them—"that is, that they were to be for his daughter and her issue"; and thinks, though is not certain, that a deed of gift was made by her father, "at or about the time the negroes went into the possession of Jenkins the second time, conveying them to his daughter and her issue."

Mrs. Ferrell testified, substantially, as follows: John Williams was her husband, and Janette Jenkins was their daughter; Janette married Richard Jenkins; at the time of their marriage, John Williams owned the negroes Phebe, Susan, Wilson, and Maria, who were afterwards in the possession of said Jenkins, "John Williams having given them to him and his wife; the negroes were given to Jenkins for the benefit of Janette and her children"; they were afterwards in the possession of John Williams again, but witness does not know the cause of their returning to his possession; Williams retained them in his own possession until he gave them to Jenkins a second time; a deed of gift of these negroes was made by Williams, "for the benefit of Janette Jenkins and her heirs", but witness does not recollect the time when it was made; "heard John Williams frequently speak of the manner in which he intended to give the property, but does not recollect whether these intentions were expressed before or after making the deed of gift; he stated, that he intended giving the property to his daughter Janette and her children." On cross-examination she stated, further, that she is about eighty-eight years old; that her memory has been good, but

is not so good now—remembers matters that occurred a long time ago, better than those of more recent occurrence; does not remember when Richard Jenkins was married, nor when John Williams died, nor when said deed of gift was made; did not read the deed, but heard it read by Williams; did not hear nor know of any contract existing at the time said negroes were first delivered by Williams to Jenkins; does not know how long Jenkins retained possession of them after the first delivery, but it was not long; does not know whether she was present when the slaves were first delivered to Jenkins, but thinks she probably was; does not recollect of hearing any conversation between Williams and Jenkins, in reference to these slaves, before Jenkins obtained possession of them.

"4. The Revised Code of Virginia of 1849, from which plaintiff read pages 513 and 514; the Revised Code of Virginia of 1819, vol. 1, from which plaintiff read section 15 on page 365, section 51 on page 432, section 6 on page 363, and section 11 on page 364; 1st Munford's Virginia Reports, from which plaintiff read the case stated at page 518; 1st Call's Virginia Reports, from which he read the case stated at page 190; 12th Leigh's Virginia Reports, from which he read the case stated at page 445; 10th Leigh's Reports, from which he read the case stated on page 5; 9th Leigh's Reports, from which he read the case stated on page 245; 3d Grattan's Virginia Reports, from which he read the case stated on page 1; 6th Randolph's Virginia Reports, from which he read the case stated on page 135; and 6th Munford's Virginia Reports, from which he read the case stated on page 581; and it was agreed by counsel, that any statute of Virginia, and any decision of the Court of Appeals of that State, that either party might wish to refer to in argument, either in this court, or in the Supreme Court if an appeal should be taken, should be considered in evidence.

"5. Evidence tending to show the conversion and value of the slaves sued for; in regard to which value there was a conflict of evidence, but there was no controversy as to the fact that two slaves, conveyed in the deed of gift from John Williams to Janette Jenkins referred to, had been sold by the defendant.

"Defendant then read in evidence the following depositions:"

1. That of Jordan P. Camden, who testified, that he was present at Richard Jenkins's marriage, in 1822, in Henrico county, Virginia; "there were negroes living with him after the marriage, by name George, Harry, Phebe, Dick, Betty, Susan, Wilson, Maria, Charles, Charlotte, and Albert; all these he inherited from his father's estate, except Phebe, Susan, Wilson, and Maria; these last four he acquired by his marriage; said Jenkins exercised ownership and control over said slaves; he lived at a distance of two or three miles from his father-in-law, John Williams; witness believes that Jenkins paid taxes on said negroes from 1822 until he left Virginia somewhere between 1830 and 1835, except on Wilson, whom he sold to Neal McCurdy of Richmond, and Phebe, who died before he left Virginia; Jenkins always treated them as his own, and received the profits of their labor;" witness does not recollect that Jenkins sold Maria, nor can he say when Wilson was sold, or for what price, or whether said John Williams was then living; thinks Williams died intestate, because (as witness knows) his son Thomas returned from Alabama and administered on his estate.

2. That of Neal McCurdy, who testified, that he knew Jenkins twenty-five years ago, when he lived in Henrico county, Virginia, some ten or twelve miles distant from witness; "does not know how many negroes he then had in his possession, and cannot say anything as to ownership or control of such negroes as were under him; does not know where he obtained any of these negroes, or who paid taxes on them;" witness bought a boy named Wilson from him several years before he left Virginia; the price, as well as recollected, was $225; said Jenkins executed the bill of sale himself, and made the contract of sale.

"This was all the evidence"; and thereupon the court charged the jury:

1. "That said deed from John Williams to Janette Jenkins conveyed to her a separate estate, so that the defendant took no title thereby."

2. "That, if the jury believed the evidence, the deed from Jenkins and wife to Camden and Williamson, did not oppose any obstacle to the plaintiff's recovery."

3. "That, if the jury should find for the plaintiff, the measure of damages would be, the highest value proved from the time of the demand to the time of the trial, or the value at the time of the conversion, with interest on that value, except so far as the two negroes alleged to have been sold were concerned; and that, as to them, the jury might find the sums for which they were sold, with interest thereon to the time of the trial."

The defendant excepted to each one of these charges, and he now assigns them for error.

I. W. GARROTT, with whom was J. G. BALDWIN, for the appellant:

I. It is submitted that the deed of gift from John Williams to Mrs. Jenkins, then the wife of appellant, does not convey to her a separate estate.

The instrument is perfect in itself; and the first charge of the court is, that this deed of itself, without extraneous aid, conveyed a separate estate to Mrs. Jenkins. The instrument is clear and unambiguous, and though obnoxious to criticism on the score of orthography and grammar, there is no mistaking its sense and import. It contains, 1st, the consideration which moved the grantor to make it; 2d, the object of his bounty, and the language proper to carry into effect his intention—"I give to her the said Janette Jenkins and the lawful heirs of her body, the following property," &c.; 3d, the manner the grantor intended the property to be held— viz., "to the proper use and behoof of my daughter Janette Jenkins and her heirs"; and, 4th, the grantor binds himself to make a clear and undoubted right to the property "from the claim or claims from every person or persons whatsoever, to my said daughter and her lawful heirs, as above stated"— in other words, John Williams bound himself to warrant the title to the property to his daughter.

Let, then, all the matters in evidence as shown in the record be excluded for a moment, and let this deed be subjected to the proper tests, and it will be seen that it does not exclude the marital rights of the husband. The charge of the court is, that "said deed from John Williams to Janette Jenkins conveyed to her a separate estate, so that the defendant took

no title to the property given thereby." The law favors the rights of the husband, and "it is necessary that the instrument under which the claim is made must clearly speak the intention of the donor to exclude the husband, otherwise he shall take the property."—Hale v. Stone, 14 Ala. 810. "The intention must be clearly and unequivocally expressed to create a separate estate in order to exclude the husband."—Pollard v. Merrell & Eximer, 15 Ala. 174. "The language used should leave no doubt of the intention, and must be such as to forbid the court to speculate on what the probable object of the donor might have been."—15 Ala. 174, *supra.* "The purpose must clearly appear beyond any reasonable doubt—otherwise the husband will retain his ordinary legal marital rights over it."—2 Story's Eq. 1381, (quoted in 15 Ala. *supra); also, Newman v. James & Newman, 12 Ala. 29; Brown v. Johnson, 17 *ib.* 232 ; Gould v. Hill, 18 *ib.* 83 ; Welch v. Welch, 14 *ib.* 76; Mitchell v. Gates, 23 *ib.* 438; 2 Story's Eq., § 1383.

1. The words here are, that the property is to be held "to the proper use and behoof" of my daughter. There is nothing in this language which points to the husband, and clearly nothing which indicates an intention to exclude his rights. The following authorities clearly show that these words are not sufficient to create a separate estate :—In Tyler v. Lake, 6 Cond. Ch. R. 74, 450, (quoted in Hall v. Stone, 14 Ala. 811,) the trustees were directed to pay certain shares of two *femes covert* "into their own proper and respective hands, to and for their own proper use and benefit." These words were held by the Lord Chancellor to be insufficient. So the words "for her own use and benefit" are also insufficient.—Kensington v. Dolland, 2 M. & K. 184, (quoted and approved in 14 Ala., 811). In Mitchell v. Gates, 23 Ala. 438, the words used were, "to remain in peaceable possession," and "to take the profits thereof to her own use and benefit during her natural life," and "then to descend to her heirs." In this last case, the court say—" 'To his use,' ' to his own use,' ' to his own proper use and behoof,' what are they but the same thing ?"—See also on this point, Inge v. Forrester, 6 Ala. 418; Welch v. Welch, 14 *ib.* 76; Pollard v. Merrell & Eximer, 15 *ib.* 169, and cases cited in cases above referred to.

2. The Virginia cases do not maintain a different doctrine.

They are probably more liberal in construing gifts, &c. in favor of *femes covert*, but they still maintain the great principle, to-wit, that it must appear that the marital rights of the husband were intended to be excluded. "I can find no case where the husband or his creditors are excluded, except by express words of exclusion, or words from which that intention can be fairly drawn."—Scott & Wife v. Gibbon & Co., 5 Munf. 90, on pp. 93-4; West v. West's Ex'rs, 3 Rand. 373; Perkins v. Dickinson & Co., 3 Grat. 335, and other cases involving the principle, in all of which it will be seen that the Court of Appeals resorts to a process of reasoning, to show either from the deed itself, or from the circumstances under which it was made, that the marital rights of the husband were excluded—thereby plainly showing that it must be made to appear in some way that the rights of the husband did not attach—otherwise they would be regarded as in force.

3. Having thus shown that the deed in this case, so far as examined, does not convey a separate estate, it is submitted that the balance can have no influence upon the question. As far as examined, the conveyance is perfect—it uses proper language to convey, points out the grantee, describes the property, and then sets forth the manner in which this property was to be held—to-wit, "to the proper use and behoof of" Mrs. Jenkins. There is no ambiguity thus far, every thing is as plain as could be desired. The grantor then adds, "I bind myself, my heirs, &c., to make the above property a clear and undoubted a right, as much so as can be made by word or deed, from the claim and claims from every person or persons whatsoever, to my said daughter and her lawful heirs, as above mentioned." This amounts to no more than an obligation to warrant the title, as if the grantor had said, "I bind myself, my heirs, &c., to warrant the right of said property against the claim and claims from every person or persons whatsoever, to my said daughter and her lawful heirs, as above mentioned." This is the only construction that can be placed on this portion of the deed, so as to make it consistent with the balance. It comes in the proper place for a warranty, and the language used is appropriate to this object. It could not be intended to control in any way the preceding parts of the deed, because no such idea is made to appear, and no such

supposition can be made without producing confusion. The grantor had already fixed the manner in which he intended the property to be held—viz., " to the proper use and behoof of " his daughter, and if this latter portion of the deed was allowed to have any influence, it would but obscure a sentence which, by itself, is perfectly plain. It could not be intended to have any influence on the way the daughter was to hold the property, for the further reason that the donor binds himself to make a good right to his daughter, and does not in any way allude to what the daughter was to do with the property after she obtained the right. Consequently, as the husband only took the property through his wife, and could only get the right after it came to her, and as nothing is said showing an intention to exclude his marital rights after it did come to her, it follows inevitably that the property vested in him, the moment title passed to his wife.

II. The second charge is, that the deed of Mr. and Mrs. Jenkins to Camden and Williamson presented no obstacle to a recovery ·in this case. This is clearly erroneous; because, even conceding that this deed conveyed to Mrs. Jenkins a separate estate, still she had a right to convey it as a *fœme sole*. This doctrine is fully shown in 2 Story's Eq., §§ 1391, 1393-94-95; 2 Leigh 183 ; 9 *ib.* 200 ; 3 Rand. 373, (377); 23 Ala. 639. The fact that the husband joined in the deed, shows his consent thereto, and strengthens the defence of appellant.

III. The court charged the jury that the measure of damages was the highest value proved from the time of the demand to the trial. This is error. The measure of damages is not the highest value proved, but the value at any time between the demand and trial.—Tatum v. Manning, 9 Ala. 144, (149); Lee v. Matthews, 10 *ib.* 682, (688-9); Ewing v. Blount, 20 *ib.* 694, (695).

IV. The court also erred in its charge as to the two negroes sold in 1824 or 1825, and 1827—being that the measure of damages as to them was the price for which they sold, and interest thereon.

1st. The rule is not the price at which they sold, but the value ; 2d, that the jury may assess the damages either at the time of conversion, or between that time and the time of trial. The court had no right to limit them to the price for

which they were sold, nor to the time of the conversion. It may be that the value between the date of the conversion and the trial, was less than at the time of the conversion; and the jury should not have been precluded from finding less damages by the charge of the court.

2. The court erred in charging the jury to find interest on the value of the two negroes that were sold. When the husband and wife live together, as in this case, and the husband receives and uses the proceeds of the wife's property, he cannot be made to account therefor. He could not be made to account for the hire of the slaves in this case; and if he could not, then he could not be made liable for interest on the value of those he had sold.—Clancy's Husb. & W. 352-3; Powell v. Hankey & Cox, 2 P. Wms. 82, (83).

V. But in no event can the husband be made to account for the rents and profits of his wife's separate estate in a court of law. He can only be made to account, if at all, in a court of equity, where complete justice can be done to all parties, by settling the equities between them. 1st, it is litigation between a trustee in equity and a *cestui que trust*, and is therefore a matter of peculiar jurisdiction for a chancery court; 2d, it is a matter of account extending through many years, where the husband has equitable rights as well as the wife, in the nature of equitable sets-off for so much of the proceeds of the wife's property as he may have applied to her benefit. For instance, if the husband was not of sufficient ability to maintain his wife without the use of the profits of her separate estate, and had used such profits to maintain her in a manner suitable to her rank, there the husband would not be held to account, or if to account, would be entitled to a deduction for all such sums as he had so expended.—Clancy on Rights 351-2. So, if the husband could show an express authority from the wife to receive and use for his own benefit the profits of her separate estate, he would not in equity be held to account. Clancy 352. And if she neither acquiesced or objected to the reception of the rents and profits, still the husband would not be held to account.—*Ib.* 352. So also, if the husband had applied the profits of the wife's separate estate to the use of the family, or in the purchase of jewelry for her, he would not be held to account.—*Ib.* 353. These authorities conclusively

show that the husband can only be held to account under peculiar circumstances, and when so held, a court of equity, which it is insisted has alone jurisdiction in such cases, will allow him a deduction for all such moneys as have been expended for the benefit of the wife. But it is apparent that a court of law is wholly inadequate to adjust the rights of the husband and wife, growing out of the trust estate of the wife.

TURNER REAVIS, contra:

I. The deed from John Williams to Janette Jenkins creates a separate estate. The orthography, syntax, and form of the deed clearly show that it was written by a person not only entirely ignorant of legal forms and technicalities, but incapable of expressing himself with any accuracy, clearness, or precision. Such a deed is construed with much more liberality than any other.—Saunders v. Saunders, 20 Ala. 716. The deed was made by a father to his married daughter and the lawful heirs of her body, in consideration of natural love and affection, to the proper use of his daughter and her heirs as above mentioned; and the donor, as if fearful that these words did not exclude the marital rights of the husband, binds himself to make to her and her lawful heirs, as above mentioned, as clear and undoubted a right to the property as can be made by word or deed, free from the claim and claims of every person or persons whatsoever. What stronger language could be used by an ignorant person, showing an intention to exclude the husband from any interest in the property? The case of Griffith v. Griffith, 5 B. Mon. 113, is fully and strongly to the point, that the deed gave a separate estate to Mrs. Jenkins.

The deed was made in Virginia, where the courts, in the construction of gifts to married women, lean strongly against the marital rights of the husband. In this respect, the courts of that State differ from the courts of this.—Scott v. Gibbon, 5 Munf. 86; Smith v. Smith, 6 ib. 581; West v. West, 3 Rand. 373; Perkins v. Dickinson, 3 Grat. 335. The last two of these cases are very strong ones, and are in direct opposition to the cases relied on by the appellant's counsel, in 12 Ala. 42, 15 ib. 169, 21 ib. 414, 23 ib. 438, 2 Port. 463, 6 Ala. 418, and 14 ib. 803. The last two cases cited from the Virginia Re-

15

ports show, also, that the courts of that State look to evidence *dehors* the conveyance, in order to ascertain an intent to exclude the marital rights of the husband. In construing a deed made there, the same rule must prevail here; and if there be any doubt that John Williams intended that Mrs. Jenkins' husband should have no interest in the property, that doubt is removed by the testimony of Mrs. Kimbrough and Mrs. Ferrell. The deed, then, according to the law of Virginia where it was made, creates a separate estate. It is not material, therefore, whether it would have that effect if made here, or not.

But the deed creates a separate estate, no matter where it was executed. A gift to a married woman, "for her own proper use", was held to create a separate estate, in Snyder v. Snyder, 10 Barr 423 ; in Warren v. Haley, 1 S. & M. Ch. Rep. 647 ; and in Griffith v. Griffith, 5 B. Mon. 113. The deed now before the court shows a much clearer intention to exclude the marital rights of the husband than was shown in either of these cases ; for it not only contains the same words showing an intention to create a separate estate, but others showing such intention. It warrants the property to her and the heirs of her body, "from the claim and claims of every person or persons whatsoever." These terms alone are sufficient to create a separate estate, as was held in Brown v. Johnson, 17 Ala. 232 ; and they certainly do in conjunction with the words, "to her proper use and behoof." In Brown v. Johnson, *supra*, a deed from a father to his married daughter, "and her heirs after her, free from the claim or claims of any person or manner of persons whatever", was held to create a separate estate. The deed before the court is from a father to his married daughter, and the lawful heirs of her body, to the proper use and behoof of his daughter and her heirs above mentioned ; and he binds himself to make her as clear and undoubted a right to the property as can be made by word or deed, free from the claim and claims of every person and persons whatsoever.

In Newman v. James, 12 Ala. 29, a gift to a married woman, " to have and to hold the same for her use, benefit, and right, without let, hindrance, or molestation whatever ", was held to create a separate estate. Such, also, was held to be

the effect of the words "exclusively to her and the heirs of her body forever", in a bequest to a married woman, in the case of Gould v. Hill, 18 Ala. 84. Such, also, was held to be the effect of a conveyance to a married woman, "to and for her only use and benefit", in Cuthbert v. Wolfe, 19 Ala. 373. In Furlow v. Merrell, 23 Ala. 705, it was held, that a bequest to a married woman, "entirely for her and her children", would create a separate estate. In Margetts v. Barringer, 7 Simons 482, a bequest to a married woman, "for her own use and benefit, independent of any other person", was held to create a separate estate. In a case cited by counsel, in 5 Ves. 520, a disposition to a married woman, "for her own use", was held to create a separate estate. The same words were held to have the same effect, in Scott v. Gibbon, 5 Munf. 86. The same words were held to have the same effect, in a case decided by the Supreme Court of Pennsylvania—see note 1 to p. 521 of 5 Ves., first Am. ed. In Hamilton v. Bishop, 8 Yerg. 33, a gift to a married woman and the heirs of her body, to the use of herself and her children, and to remain in her possession for the use and support of said children, forever, was held to create a separate estate. The case of Johnson v. Thompson, 4 Dess. 458, is still more favorable to the wife than any of the cases cited. See, also, Taylor v. Stone, 13 S. & M. 652.

Now, the words of the deed before the court—"I bind myself to make her as clear and undoubted a right to the property as can be made by word or deed, free from the claim and claims of every person and persons whatsoever"—are as expressive of an intention to exclude the marital rights of the husband, as the words used in the case of Brown v. Johnson, Newman v. James, and Margetts v. Barringer. And the terms "proper use and behoof", are equivalent to the term "exclusive", in Gould v. Hill; to the terms "for her only use and benefit", in Cuthbert v. Wolfe; and to the term "entirely", in Furlow v. Merrell. See Webster's Quarto Dictionary, for definitions of the several words. The terms "proper use and behoof" receive a different construction, when used in a deed of this description, from what they receive when used in other conveyances. This is expressly decided in Griffith v. Griffith, 5 B. Mon. 113. What the court say to

the contrary, in Mitchell v. Gates, 23 Ala. 447, was not ne-
cessary to the decision of that case, and is unsustained by au-
thority. None of the cases cited by the counsel for the appel-
lant, which were decided by this court, have any resemblance
to the case at bar ; and the cases cited from other courts are
against the weight of authority cited for the appellee. It is
useless, however, to labor this question ; for the law of Vir-
ginia is decisive that the deed to Mrs. Jenkins gives her a
separate estate.

II. The only question as to the effect of the deed purporting
to have been made by Jenkins and his wife to Camden and
Williamson, which arises upon the record, is, whether the exe-
cution of the deed by Jenkins *alone* conveyed the legal title,
so that the administrator of Mrs. Jenkins cannot recover the
property at law. It is very clear that it cannot have that
effect—first, because the legal title was in Mrs. Jenkins, and
he could not convey it (Hooper's Ex'r v. Smith, 23 Ala. 639;
13 S. & M. 652; 8 B. Mon. 33) ; secondly, because the deed
was not executed, accepted, or assented to by the trustees
(4 Gilm. R. 159; 10 Misso. 411; 4 Hen. & Munf. 415).

The question whether Mrs. Jenkins could convey a title to
her separate estate, which could be set up at law, does not
arise upon the record. The bill of exceptions states, that all
the evidence before the jury is set out in it, and does not show
that the deed was ever executed or delivered by Mrs. Jenkins,
or that it was executed, accepted, or assented to by the trus-
tees. The only evidence of the execution or delivery of the
deed is, first, the answer of Jenkins himself to interrogatories
propounded to him by the plaintiff, that he supposes he exe-
cuted it, but has no recollection of having done so ; that he
does not know whether the other parties executed it or not ;
and that he requires the deed to be duly authenticated and
proved ; secondly, this statement in the bill of exceptions :
" The plaintiff offered and read to the jury the following evi-
dence : 1st, interrogatories to the defendant, and his answers
thereto ; 2d, the copies attached as exhibits to the interroga-
tories, which were admitted in evidence in lieu of the originals,
by consent of the defendant's counsel. The defendant also
admitted that the originals of said copies had been executed,
proven, acknowledged, and recorded, as endorsed and certified

on said copies." The copies referred to are the deed of gift from John Williams to Janette Jenkins, and the deed purporting to have been made by her and her husband to Camden and Williamson. The certificate endorsed on the deed of gift shows, that the deed was proved by three witnesses, and recorded. The certificate endorsed on the deed to Camden and Williamson shows that it was acknowledged by Jenkins only, and does not show that it was proved as to any of the other parties. It will be perceived from the bill of exceptions, that the admission of the execution of the latter deed is expressly confined to the evidence of the fact furnished by the certificate endorsed upon it. This admission goes to the same extent precisely that the admission of Jenkins in his answer goes to, and is in exact agreement with it. The consent of the defendant's counsel that the copies should be read in lieu of the originals, was only a waiver of the production of the originals, and not an admission that the originals had been executed. This is shown, not only by the fact that there was a subsequent admission as to their execution, but by the express limitation of such admission to the evidence of the fact of their execution furnished by the certificate endorsed upon them, and by Jenkins' statement under oath, that he did not know whether the other parties to the deed purporting to be made by him and his wife (a fact which he must have known if it existed) executed it or not, and his requirement that it should be duly authenticated and proved. It seems entirely clear, then, that Jenkins not only cautiously avoided an admission of the execution of the deed to Camden and Williamson by any one but himself, and that there was no evidence of its execution by any of the other parties, but that he did not rely upon it in the court below.

The fair inference from the bill of exceptions is (and which is the fact) that the defence set up in the court below was, first, that the deed of gift to Mrs. Jenkins did not create a separate estate, and secondly, that the property had been delivered to Jenkins shortly after the marriage, and was therefore presumed to be an advancement; and that consequently the subsequent execution of the deed of gift could not affect the rights he acquired by the first delivery.—See the testimony introduced by the defendant. The bill of exceptions

also shows, that the copy of the deed purporting to be made by Jenkins and his wife was read in evidence by the plaintiff. This was done for the purpose of rebutting the inference that the first delivery of the slaves was a gift, or advancement, as the fact that Mrs. Jenkins was named as a party to a deed conveying the same property, which Jenkins acknowledged he executed, was a strong circumstance to show that he did not consider the first delivery as a gift to him, but that he did consider the title to be in his wife. The charge of the court, that the deed opposed no obstacle to the plaintiff's recovery, was merely in reference to the fact that it had been executed by Jenkins alone, and to prevent the jury from being misled by it. The idea that the deed was executed by Mrs. Jenkins also, and barred the plaintiff's recovery, is thus shown to be altogether an after-thought.

But if it is not entirely clear, that there was no evidence of the execution or delivery of the deed by Mrs. Jenkins, nor any admission of such execution, it is certain that the bill of exceptions admits of two constructions—one, that the execution of the deed by all the parties was admitted; and the other, that its execution by Jenkins only was admitted. Now the rule is, that if a bill of exceptions admits of two constructions, that will be adopted which will affirm the judgment.—Dozier v. Joyce, 8 Port. 303; Patton v. Hayter, 15 Ala. 18; Donnell v. Jones, 17 *ib*. 689; Perminter v. Kelly, 18 *ib*. 716; Andress v. Broughton, 21 *ib*. 200. Consequently, the effect of the deed, if it was in fact executed by Mrs. Jenkins, does not arise upon the record; but if it does, the charge of the court, that the deed opposed no obstacle to the plaintiff's recovery, was right, on the following grounds:

1. At common law, every deed of a *feme covert* is void; nor can a *feme covert* make any contract which will affect her separate estate, at common law. The separate existence, or separate estate of a married woman is unknown to the common law: a separate estate is the creature of a court of equity; and it is only in a court of equity that a married woman, having a separate estate, is regarded as a *feme sole*, and as such, allowed to dispose of it.—Clancy on H. & W. 321; 1 White's Lead. Cases, 360 top p. (65 Law Lib.); Bell on Prop. of H. & W. 513 mar. (67 Law Lib.); Roper on H. & W. 235-240

mar. (32 Law Lib.) ; 2 Story's Eq. § 1397; Bing. on Inf. & Cov. 237, and note 5; Marshall v. Rutton, 8 Term Rep. 547; Kavanaugh v. Brown, 1 Texas Rep. 481; Calhoun v. Calhoun, 2 Strob. Eq. 236; Askew v. Daniel, 5 Ired. Eq. 321; George v. Goldsby, 23 Ala. 326. No case can be found, where the deed of a *feme covert*, conveying her separate estate, was held valid, *at law*, except where the conveyance was under an express power to convey, in the instrument creating the estate, or was executed in conformity to a statute. The case of Hooper's Executor v. Smith, 23 Ala. 639, does not decide that the deed of a married woman, conveying her separate estate, is good at law : nor can that case be sustained, either upon principle or authority ; it stands alone, and in opposition to principle and all authority. The very extract from Clancy, on which it is based, shows, that it is *in equity* that a married woman, having a separate estate, is regarded as a *feme sole*, and as such allowed to dispose of it. The attention of the court was not directed to the distinction between the effect of such conveyances at law and in equity. If it had been, the decision must have been different. It is therefore submitted, that that case cannot be properly adhered to; and that if it can, it does not decide upon the effect of a deed. Not one of the other authorities relied on by the appellant's counsel decides that a conveyance by a married woman of her separate estate is good at law. They all assert the general principle, which is not disputed, that in equity a married woman is regarded as a *feme sole*, in respect to her separate estate, and as such allowed to dispose of it. To this extent the Virginia cases relied upon go, and no further. They are all equity cases, (except West v. West,) and merely assert the general doctrine of the courts of equity. The case of West v. West, 3 Rand. 373, decides, in conformity with the general rule, that a married woman may dispose of her separate personal property, by will. But the reason why she may dispose of her separate personal property by will, so as to pass a title to the executor or administrator, at law, while she cannot pass a title at law by deed, is, that the will does not take effect until after the coverture ceases, and the deed, if it take effect at all, must do so during the coverture. It seems clear from what has been said, that the deed of Jenkins and his wife, if executed

by her, could not be set up in a court of law, to defeat a re-
covery by her administrator.

2. If Mrs. Jenkins could convey a title to her separate es-
tate, which could be asserted in a court of law against her
administrator, her deed is void for the want of a privy exam-
ination pursuant to the Virginia statute.—1 Rev. Code of
Virginia, of 1819, p. 365, § 15 ; 1 Call 190; 1 Munf. 518; 12
Leigh 445; 9 ib. 200; Code of 1849, p. 513; Sess. Acts 1843-4,
p. 53.    It is contended, however, by the counsel for the appel-
lant, that the statute does not apply to personal property ;
and Mr. Baldwin, in his written argument, says it would
amuse a Virginia lawyer, to tell him that it did.    This arro-
gant assertion is denied and refuted in the opinion of distin-
guished Virginia counsel, which Mr. Baldwin himself has filed
on behalf of the appellant.    It is also contended by the ap-
pellant's counsel, that if the statute applies to personal pro-
perty, it does not apply to separate estates.    In this respect,
also, the Virginia counsel differs with the appellant's ; and he
is sustained by the case in 9 Leigh 200.    But while the Vir-
ginia counsel admits, in his written opinion, that the statute
applies to separate personal property, he argues, that it merely
*authorizes* a privy examination in respect to conveyances of
such property, while it *requires* it in a conveyance of separate
real estate ; and the reason he gives for the distinction is,
that without the aid of the statute, a married woman could
convey her separate personal property by her sole act, but not
her real estate.    Now this is not true in respect to the real
estate ; for she has precisely the same power to dispose of her
separate real estate that she has to dispose of her separate
personal property.—2 Story's Eq. §§ 1389-90, and cases cited
in note 3.    As, therefore, the reason for the distinction does
not exist, the argument falls to the ground ; and consequently,
if the statute requires the privy examination in a conveyance
of real estate, it requires it in a conveyance of personal.
The case in 9 Leigh 200, is decisive to show, that a privy ex-
amination is requisite to a conveyance of separate real estate;
but the effect of the statute in a conveyance of separate per-
sonal property is not passed upon.    When, therefore, the
court say a married woman may convey her separate personal
estate by her sole act, the court must be understood as refer-

ring to her power when unrestricted by the conveyance creating the estate, and as having no reference to the restraining effect of the statute. No question as to the effect of a conveyance of separate personal estate, without a privy examination, was before the court, and of course none was decided. The statute, then, is not enabling ; for, according to the authorities cited, a married woman has precisely the same power to dispose of her separate real property that she has to dispose of her separate personal. If, therefore, she might have conveyed either, without the aid of the statute, the statute was unnecessary as an enabling statute, and consequently can only be regarded as *disabling*, or as enabling to convey a title that would be good *at law*, which before could only be asserted *in equity*. The latter construction seems to be the true one, so far as separate estates are concerned. As to the rule for construing a statute under such circumstances, see Smith's Com. on Stat., § 581 ; 4 Day's Rep. 60. There can be no serious question that the statute applies equally to personal and real property. The terms "any estate or interest" are as general and comprehensive as they can be to include both. 2 Bouv. Inst., p. 212, § 1689. The proviso in the statute is a mere limitation of the wife's liability upon any covenant or warranty in a deed by which she conveys real estate. The Code of 1849, p. 513, in terms, includes personal estate. The authorities for the section of the Code of 1849, referred to, show that no change had been made in the section of the Code of 1819.—See the Sess. Acts of 1843-4, p. 53. As no change had been made, and as the Code of 1849 refers in the margin to the Code of 1819, as authority for its provisions, the Code of 1849 must be regarded as a legislative construction of the Code of 1819, referred to in the margin. If these views be correct, they are decisive of the invalidity of the deed of Jenkins and wife, so far as she is concerned ; and consequently the charge of the court to that effect was right.

3. If the deed is void, *as a deed*, or for the want of a privy examination, it cannot operate as a parol declaration of a trust, or a gift, or an appointment ; for by the laws of Virginia, all such gifts are void.—1 Rev. Code of 1819, p. 432, § 51; 6 Rand. 135; 3 Grat. 1; 9 Leigh 245; 10 *ib*. 5. For if a married woman is to be regarded as a *feme sole*, in respect

to her separate estate, *at law*, as well as in equity, her conveyances must conform to the statute in all respects as if she were in fact a single woman. But this question does not arise upon the record. The charge was, that *the deed* presented no obstacle, &c.

4. There is not only no evidence in the record that Mrs. Jenkins executed the deed, but there is none that she ever delivered it, or recognized it. The mere fact that it was acknowledged by her husband is no evidence that it had been delivered by her, either to him or to the trustees, especially when he swears that he does not know whether she executed it or not. A delivery will not be presumed against a wife, who is presumed to be under the coercion of her husband, when the deed purports to give him an interest in her property.—Gamble v. Gamble, 11 Ala. 966; 2 Dev. & Batt. Eq. 65; 1 Stew. & Por. 56.

5. There is no evidence in the record, that the trustees either executed the deed, or accepted it, or assented to it. Until they did one or the other, the deed was wholly inoperative at law. It was not beneficial to them; on the contrary, it imposed duties and liabilities upon them, without giving them any beneficial interest, or compensation. Their assent, under such circumstances, cannot be presumed.—Hulick v. Scovil, 4 Gilman's R. 159; Renfro v. Harrison, 10 Misso. 411; Kennedy v. Waller, 4 Hen. & Munf. 415.

So then, whether the deed was void as to Mrs. Jenkins, at common law, or for the want of her privy examination, or for the want of delivery by her, or for the want of execution, acceptance, and assent of the trustees, it opposed no obstacle to the plaintiff's recovery.

III. At the time Jenkins sold the two slaves, the legal title and the right of possession were in his wife, so that the sale amounted to a conversion.—Hooper's Ex'r v. Smith, 23 Ala. 639; 13 Sm. & Mar. 652. The right of action was suspended during the coverture. Upon the death of Mrs. Jenkins, the legal and equitable title united in her administrator, so that he could have sued the purchasers of the property and him who converted it by selling it. It seems clear, that if the title vested in the administrator, so that he could have sued the purchaser, it vested in him so as to enable him to sue the

seller.   The title, in either case, relates back to the time of the sale.—20 Ala. 338; 21 *ib*. 458; 22 *ib*. 199; 13 S. & M. 652. The plaintiff was, therefore, just as much entitled to recover the value of the two negroes sold by Jenkins, in Virginia, as he was to recover the value of those remaining in his possession.

The case cited by the appellant's counsel, from 7 Leigh 66, has no resemblance to this.   In that case, the husband had no remedy against the wife, either at law or in equity ; consequently, his administrator had none.   In the case cited by the appellant's counsel, from 3 Leigh 255, the legal title was in the husband, by his purchase, and consequently his executor was entitled to recover the property from the *cestui que trust*. That case, therefore, is not like the present.   But if it were, it only shows, there is a difference between the law of Virginia and the law of Alabama, in relation to the remedy in such a case.   That case shows that the remedy is in equity. The cases decided by this court show, that where a conveyance is made to a married woman, without the intervention of a trustee, upon the dissolution of the coverture the legal and equitable title unite, so that the wife or her administrator can sue or defend a suit for the property at law.—Knight v. Bell, 22 Ala. 198 ; Powell v. Glenn, 21 *ib*. 458 ; Randall v. Shrader, 20 *ib*. 338 ; Puryear v. Puryear, 12 *ib*. 13 ; same parties, 16 *ib*. 491-2 ; Cook v. Kennerly, 12 *ib*. 42 ; Gunn v. Barrow, 17 *ib*. 747.   Conceding, then, that the case in 3 Leigh 255, shows that the remedy of Mrs. Jenkins' administrator would have been in equity, it does not affect the plaintiff's right to recover here, where the remedy is different.   The remedy is governed by the law of the forum.—2 Ala. 397.

The record does not show that any question was made in the court below, as to the right of the plaintiff to recover the value of these two slaves, if he were entitled to recover at all.   The charge only relates to the measure of damages, in respect to them.   It is too late, therefore, for the defendant below to object that he was not liable to account for them at law.

But it is objected, that the charge is wrong in respect to the measure of damages for the conversion of these two slaves. The charge of the court on this point was strictly correct, and

in exact conformity with Lee v. Matthews, 10 Ala. 682. It is contended, however, that Jenkins was not accountable for the profits of these two slaves, during the coverture, and that, therefore, interest should only have been given from the time Mrs. Jenkins died. It is a sufficient answer to this position, to say, that it does not appear from the record that Mrs. Jenkins lived with and was maintained by her husband; and it is only in that event that he would not be accountable for hire and profits. Besides, the sale of the slaves was a wrongful act; if it be true, therefore, that if he had not sold the slaves he would not have been accountable for the profits, having wrongfully sold them, he cannot be heard to say that he shall be in as good a situation, notwithstanding, as if he had not violated his trust. This answer to the objection seems to be conclusive.

But it is contended, that there was no evidence of the price for which one of these slaves was sold, and therefore there could be no recovery as to that. This is a mistake. The bill of exceptions states, that there was "evidence tending to show the conversion and value of the slaves sued for." This is a sufficient answer to that objection; but if it were not, the charge itself was right, and if the verdict was wrong, it cannot be reached by writ of error : a motion for a new trial was the proper remedy.

It is contended, also, by the appellant's counsel, that the charge was wrong in respect to the measure of damages for the conversion of the other slaves. The charge is, that "the measure of damages would be the highest value proved, from the time of the demand to the time of the trial, or the value at the time of the conversion, with interest on that value." This is the general rule.—Ewing v. Blount, 20 Ala. 694; Lee v. Matthews, 10 ib. 682; Tatum v. Manning, 9 ib. 144; Sedgw. on Dam. 502-3, which see particularly. If there be any error in the charge on this point, it is in favor of the appellant. Besides, it was waived and cured by the agreement to be found in the judgment entry, that the judgment, as to all the slaves except the two sold, might be discharged by surrendering the slaves.

IV. The claim now set up by Jenkins, that he is entitled to the slaves in controversy, *jure mariti*, is another after-

thought. There is nothing in the record upon which that question can be raised. But if there were anything, it is sufficient to say, that Mrs. Jenkins' administrator is entitled to recover the slaves for the purpose of paying her debts. It will be time enough for him to set up that claim, when the estate comes to be distributed.

Upon the whole, it is submitted for the appellee, that there is no error in the charge of the court, and that the judgment should be affirmed.

CHILTON, C. J.—We shall first ascertain the legal effect of the deed from John Williams to his daughter Janette Jenkins. Did it vest in her a separate property in the slaves therein mentioned? We are satisfied, upon a careful analysis of the whole instrument, that such was the intention of the grantor, and that according to the construction of such instruments by the courts of Virginia where the deed was made, such was its legal effect there at the time of its execution. It is manifest from the face of it that it was drawn by an illiterate and inexperienced draftsman, and such instruments should not be subjected to those rigid rules of legal criticism, which might properly enough be applied in the construing of more formal and technical instruments. The great point to be attained in the construction of all written instruments, is to arrive at the true meaning and intention of the parties to them, and, if that intention be lawful, to give effect to it.—20 Ala. 710 ; 22 *ib.* 433.

In this deed, the father gives to his daughter, then a married woman, and the lawful heirs of her body, the slaves in controversy, forever, to the proper use and behoof of said daughter and her heirs as aforesaid, and binds himself, his heirs, &c., "to make the above named property a clear and undoubted a right, as much so as can be made by word or deed, from the claim and claims from every person or persons whatever, to my daughter and her lawful heirs as above mentioned."

It is true, that the law favors the marital rights of the husband ; and in order to exclude him, there must be a clearly expressed intention. The language used should be such as to forbid speculation as to what the probable object of the donor

might have been.—Pollard v. Merrill & Eximer, 15 Ala. 174. In the language of Judge Story, "the purpose must clearly appear beyond any reasonable doubt, otherwise the husband will retain his ordinary legal marital rights over it."—2 Story's Eq. § 1381. At the same time, however, it is well settled, that no particular language or form is necessary to create a separate estate in a married woman : it is sufficient if, from the whole instrument by which it is limited, the intention clearly and unequivocally appear.—Cuthbert v. Wolfe, 19 Ala. 373 ; 17 *ib.* 232. In the case before us, the donor gives the property to his daughter, and to the heirs of her body, to the proper use and behoof of said daughter, and binds himself to make ·her title as clear and undoubted as could be done by word or deed—a right free from the claim of every person whatever, and, of consequence, from the husband's claim. It would be difficult to find language more comprehensive than the donor here uses. True, it is inserted somewhat informally, as a species of warranty in a deed of gift, which, being voluntary, is perhaps nugatory ; but it serves to explain the other portions of the instrument, and to show that the intention was to exclude every one from claiming and enjoying any right to the property except his daughter, to whose proper or particular individual use he gives it. See Griffith's Adm'r v. Griffith, 5 B. Mon. Rep. 113. It would seem absurd to say that he bound himself to vest the right in his daughter, to her *proper use,* free from the claims of all and every person, and consequently from the husband's claim, and at the same time gave the property to the husband. It is evident that the donor points to the husband, and the manner in which he is conveying the title, and not to any supposed defect in the title growing out of his want of ability to confer a good one. He is to make her such title as will secure the property to her proper use, exclusive or free from the claims of every other person—the right is to be, in this respect, "as clear and undoubted as could be made by word or deed." It would, we think, among the illiterate, be very difficult to find language more expressive of an intention to give the property to the daughter, and to exclude the husband as well as every one else.

As to the effect of the deed from Richard Jenkins and wife

(Janette) to J. P. Camden and Samuel T. Williamson, we have had some difficulty, and find some conflict of authority.

Before, however, proceeding to discuss this point, it is proper to observe, that the objection insisted on by the counsel for the appellee, that it was not proved to have been executed by Mrs. Jenkins, cannot be sustained. The appellee introduced the copy of the deed, and read it to the jury himself, not as the deed of the husband only, but as the deed of the parties whose names appear attached to it. The bill of exceptions states, in enumerating the items of proof made by the parties respectively, that the second item of proof offered by the plaintiff below was, "The copies attached as exhibits to the interrogatories, which were admitted in evidence, in lieu of the originals, by consent of the defendant's counsel. The defendant also admitted, that the originals of said copies had been executed, proven, acknowledged, and recorded, as endorsed and certified on said copies." Having introduced and read them to the jury, generally, without any attempt to limit their effect as proof, the appellee cannot now be heard to say they were not proved. He conceded their genuineness by reading them ; nor is the concession at all restricted by the admission on the part of the counsel for the defendant in the court below, " that the originals of said copies had been *executed*, proven, acknowledged, and recorded, as endorsed and certified on said copies." This has reference to the registration of the instruments. It was an admission obtained for the benefit of the plaintiff below, designed to enlarge the effect of his proof, and not to limit the operation of the deeds, or to question their genuineness.

Let us proceed to consider its legal operation, as respects the rights of the parties before the court.

The action is trover, by the administrator of the wife, against the husband, to recover for the conversion of slaves in whom, as we have shown, the wife had a separate estate, secured by the deed of gift from her father. This deed purports to convey these slaves to Camden and Williamson, in consideration of the love and affection which Richard, the husband, and Janette, the wife, bore towards their daughter, Ann Richard Jenkins, and for any child or children thereafter to be born, to have and to hold to the said Camden and Wil-

liamson forever, &c., "in trust, nevertheless, that they shall permit the said Richard Jenkins and Janette, his wife, during their natural lives, or the natural life of the survivor of them, to remain in quiet and peaceable possession of said slaves and their future increase, &c., and to take the profits thereof to their own use during their lives."

If we concede the right and the capacity of the parties to convey, the effect of the deed would be, to vest the legal title in the trustees named in it, and the beneficial interest in the husband and wife during the coverture ; and if the wife survived the husband, she would be vested with the complete title, as the trust, in that event, would be fully executed, nothing remaining for the trustees to do ; but upon the death of the wife, the husband surviving, the title remains in the trustees, in trust for him during life, and after his death for the personal representatives of the wife.

The question then arises, Is the deed valid ? Can husband and wife join and make a valid deed, transferring her separate property in chattels to a third party, which can be set up by the husband, after the death of the wife, in a court of law ? In other words, can the wife create an interest, by deed, pending the coverture, in favor of her husband, in her separate personal estate, which can be regarded by a court of law ?

I have been not a little perplexed in looking into the authorities to find the question left by them in so much uncertainty and doubt.

Whatever may be the doctrine as held by some of the States in the Union, it is now well settled in England, and is so held by the Supreme Court in this and some of the other States, that a *feme covert*, with respect to her separate estate, is to be regarded as a *feme sole*. The doctrine asserted by Lord Chancellor Thurlow in Fettiplace v. Gorges, (1 Ves. Jr. 46 ; S. C. 3 Bro. Ch. Rep. 8,) that where personal property is given to a married woman to her sole and separate use, it is subject to all the incidents of property vested in persons *sui juris*, among which is the *jus disponendi*, is generally received, and we think correctly, as a just and proper exposition of the law upon this subject.—2 Bright on Hus. & Wife 220 ; Jaques v. Methodist Episcopal Church, 17 John. 548 ; 20 Wend. 570;

Roper on H. & W. vol. 2, p. 182; Vizonneau v. Pegram, 2 Leigh 183; Lee v. Bank U. States, 9 Leigh 200.

In order to pass the title to the wife's real estate, by the common law, it was necessary that she and her husband should join in levying a fine; and in England, since the act abolishing fines and recoveries, (3d and 4th William IV. ch. 74,) married women are enabled, with the concurrence of their husbands, and in certain cases without such concurrence, to dispose by deed, or relinquish any estate they may have, as effectually as they could do if *sole; provided,* such deed be acknowledged by her on privy examination before some officer pointed out in the act; and similar acts, providing for validating the deeds of *femes covert* upon acknowledgments taken after previous examination apart from the husband, have been passed in most (if not all) of the States. These are enabling statutes, conferring upon the wife a power which she did not before possess, and were not designed to take away any power which she previously possessed of making a valid disposition of her separate personal estate. Such we regard the statutes of Virginia, requiring a privy examination of the wife as a pre-requisite to her making a valid conveyance of her realty.—See Rev. Code of 1819, p. 365, § 15. Gifts, by deed, or otherwise, by a married woman of her separate personal estate, remain unaffected by the statute, as respects the rights of the parties to them, and as between the parties themselves.

We refer to this mode, pointed out by the statutes, by which married women, in conjunction with their husbands, can pass the legal title to their real estate, and which is but the substitute for the common-law mode of fine and recovery, merely to show the anomaly which would exist, if there was no method of passing the absolute interest in the wife's personal chattels. As such property so often changes hands;—so often consists of articles of merchandize, and commodities which must needs be sold or exchanged, or become of little or no value,—it would be very remarkable if they could not be disposed of, so as to vest the right in the purchaser; and not less anomalous to hold that each purchaser or person who acquires the right from the wife must be driven into a court of equity, or be liable at law for a conversion of the property and damages.

16

The distinction which exists between dispositions of real and personal estate by married women, as respects the necessity of a private examination apart from their husbands, is very correctly alluded to in Lee v. The Bank of the United States, 9 Leigh 200 ; and in the views taken by the learned judges in that case, we fully concur. It it very clear, that no such examination is required to render the transfer of her separate personal estate available.

We fully concur with the learned counsel for the appellee, that a married woman can enter into no contract upon which she can be charged in a court of law ; and this irrespective of whether she has a separate estate or not. The great case of Marshall v. Rutton, 8 Term R. 547, has settled the law in England, and this case has been followed generally in this country. That was an action of *assumpsit* against a married woman for goods sold and delivered. The other cases referred to by the counsel show like efforts to make the wife liable, at law, upon her contracts. This, we concede, cannot be done. But it by no means follows, because she cannot create a debt, or incur an obligation, which can be made the ground of action at common law against her, or charged by legal process against her separate estate, that she may not transfer a legal right to another, or such a right to the enjoyment of her personal property, which she owns separate and distinct from her husband, as a court of law will regard and uphold. It is conceded by all, that she may dispose of such property by will ; why not in any other manner by which such property is ordinarily transferred ? True, if she make the disposition by deed, she is not, at law, liable upon the covenants contained in it—no action can be maintained at law against her upon it ; but it is effectual to pass all the interest she has, and she has the unlimited right of disposition, *as though she were sole.*

In relation to this point, Mr. Roper, in his work on Husband and Wife, page 229, holds the following language :—" It having been once established, that a married woman might lose that character, and act at law, by circuity through the intervention of trustees, as a single woman, in regard to real or personal estate settled to her separate use and disposition, a court of equity, disengaged from legal forms, went further,

and held that it would supply the omission of trustees, and raise a trust upon the apparent intention ; so that, whether there be trustees or no trustees appointed, a married woman is now competent, at law or in equity, (although contrary to the rules and principles of the general common law,) to take and dispose of property limited to her separate use as a *feme sole*." And on page 240 the same author says, "Where property is limited to the separate use of a married woman *generally*, without giving to her any particular power of disposition, she may sell, pledge, or encumber it, *in the same manner as if she were a feme sole*."

In the case of Dewey v. Bayntun, 6 East 257, it seems to have been conceded by the court, that the husband and wife might contract pending the coverture through the medium of trustees, she purchasing with proceeds of her separate property certain furniture, pictures, and statuary belonging to him. The question, on which the rule for a new trial was made absolute, was, whether there was not such inadequacy in the price to be paid as stamped the transaction as fraudulent and a device to defeat the claims of the creditors. If, however, the parties could not have contracted, in the view of a court of law, in reference to the wife's separate property, the court should have made the case turn upon that point, and have readily disposed of it by that objection, which met it at the threshold. In commenting upon this case, Lord Eldon said, "From the only account I have had of it, it appears to have been asserted, that a husband and wife could not, after marriage, contract, for a *bona fide* and valuable consideration, for a transfer of property from him to her or trustees for her. *The doctrine is not so, either here or at law*."—Lady Arundell v. Phipps, 10 Ves. 148 ; Bright on H. & W. 109.

In Wright v. Rutton, 2 Ves. R. 673, the Master of the Rolls takes the distinction between an assignment in trust by indenture, executed by husband and wife, for the benefit of the husband, of personal property bequeathed to the wife in the hands of the executor, and such an assignment of her separate estate, thus—"The clear distinction is, that in point of law and the consideration of this court, a married woman has no disposing power, although she has a disposing mind. As to any property she has, the law and this court consider her

so much under the coercion of her husband, that she cannot exercise any disposing power ; *with this exception,* that though at law she is totally devoid of any property, *any person may make her a feme sole as to particular property he gives her;* but as to any other property which the donor has not given to her sole and separate use, she is a person having no disposing power ; and the husband cannot, in any way, act with regard to any property in a trustee for her, or dispose of it, without the intervention of this court, as he may upon choses in action", &c.

Suppose, in the case before us, the slaves had actually been delivered to the trustees named in this deed, and a stranger had taken them out of their possession ; could not the trustees have maintained an action at law for their recovery, for the purposes of carrying out the trust reposed in them ? It is certain that they could. Yet their right would have been derived from the married woman ; and whether from the deed or the delivery, makes no difference : it is still her act, or disposition of them, which vests the title or right to maintain the action.

Upon the whole, without citing further authority, we are of opinion, that Mrs. Jenkins had the right, either with or without her husband, to make any disposition of these slaves which she could have made had she been a single woman ; that she had a right to give them to her husband, or to create by deed, as she has here done, a trust or use in his favor ; and that the personal representative of the wife cannot, in a court of law, in the face of this deed, recover the slaves of the husband. That the husband, who was the wife's equitable trustee, joined in the transfer, makes no difference. The agreement, so far as the wife was concerned, was executed, and the property is where a court of chancery would place it, if the husband resorted to no coercion or undue influence to obtain the transfer or deed. This is not an attempt, therefore, to charge the wife, or her representative, upon her contract ; but the husband alleges his possession to be lawful, not tortious, being secured in the use by the solemn act of his wife, upon which he has a right to repose. His possession and refusal to surrender the slaves is consequently no conversion.—See McCroan v. Pope, 17 Ala. 617 ; McGowan v.

Young, 2 Stew. & Por. 160; Lowremore v. Berry, 19 Ala. 130.

We see no reason why the wife may not dispose of her separate personal estate, as well by *deed*, as by writing not under seal, or by parol. The only effect of either mode of transfer is, to vest the property in the person to whom it is transferred. The wife is not personally chargeable, *at law*, upon any such contract; but, when executed, it is operative to pass her interest. It is also readily conceded, that where the title is vested in trustees for the separate use of married women, they can only transfer an equitable interest, and not one which, at law, can over-ride the title of the trustee.—Puryear v. Puryear, 14 Ala. 121. But in this case, the donor conveyed the property to the wife herself; and if we concede that she could not, by reason of her coverture, take the title *at law*, yet it would vest in the husband, he consenting to it; and he is a party to the conveyance by which his present use is secured.

In Hooper's Ex'r v. Smith and Wife, 23 Ala. 639, we held, that under the act of 1848, securing to married women their separate estates, a *feme covert* may sell, charge, or dispose of her property without the consent or concurrence of her husband. She need not resort to a court of equity for power to sell her personal chattels. She has the power to sell and dispose of them precisely as if *sole;* and it were vain to say she has the power and right to sell, and yet deny her the power of vesting a right in the purchaser. We decide nothing as to her power over her real estate, as that question is not involved.

The case cited by the counsel, of George v. Goldsby, 23 Ala. 336, has no reference to the *separate estate* of the wife, and consequently is not opposed to the views we have above expressed. Neither will we say, that where the property is vested in trustees, she can transfer a legal right to it. All we decide is, that where personal property is conveyed directly to the wife, to her sole and separate use, she and her husband can, by their joint deed, vest the legal title in trustees for their use and the use of the survivor for life; and that such deed may be set up by the husband who survives the wife, to defeat the action of trover brought by the personal representative of the wife.—See, as to the wife's power of disposition, McCroan v. Pope, 17 Ala. 617.

But it is said, this deed was never delivered, that the trustees never accepted the trust, and that there was no delivery of the slaves. To this we answer, it was admitted that the deed was *executed*, which implies a delivery. It was, moreover, introduced and read, as we have before stated, without objection, and as against him who read it, the opposite side has the right to regard it as legal testimony, and as available to the full extent of its legal effect as a valid subsisting deed, having been offered without restriction as to its effect as testimony. The *execution* of the deed rendered it unnecessary to make any formal delivery of the property. The law, moreover, does not require the mere useless ceremony of having the property delivered by the husband and wife to the trustees, that it might be delivered back immediately to them. That the trustees both executed the deed, is evidence that they consented to act and accepted the trust. As to the execution of the deed, see Puryear & Wallace v. Beard, trustee, 14 Ala. 121.

As to the two slaves sold by the husband while they were the separate property of Mrs. Jenkins, and before the deed by her and her husband to the trustees, we need only remark, that the wife's right of action was suspended during the coverture. If she had survived her husband, we entertain no doubt that she might have sued his personal representative for the conversion, if she did not expressly or impliedly consent to such disposition ; and since death has terminated the coverture by her decease, we see no reason why her personal representative may not bring the action. If there be equitable sets-off, the party who insists upon them must go into equity for their allowance. We think the cases in our own court furnish abundant authority for sustaining the action. See Cook v. Kennerly, 12 Ala. 42 ; Puryear v. Puryear, *ib.* 13 ; 16 Ala. 491 ; Gunn v. Barrow, 17 *ib.* 747 ; Randall, adm'r, v. Shrader, 20 *ib.* 338 ; Powell v. Glenn, 21 *ib.* 458 ; Knight v. Bell, 22 *ib.* 198.

As to the damages : The true measure of damages, in an action of trover, where the thing converted has a fixed value, is that value at the time of conversion ; and the jury may give interest upon it. If the value is fluctuating, the jury may take its highest value at any time between the conversion and

the trial.—Strong v. Strong, 6 Ala. 345; Tatum v. Manning, 9 *ib.* 149; Lee v. Matthews, 10 *ib.* 688-9; Ewing v. Blount, 20 *ib.* 694.

Let the judgment be reversed, and the cause remanded.